Geoffrey M. Faust
P.O. Box 751
Clayton, CA 94517
Telephone: (925) 673-1988
Fax: (925) 673-7191

Attorney for Plaintiff Robin Roderick


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


Robin Roderick,                          )   CASE NO. C04 2436 MHP
                                         )
                Plaintiff,               )   Memorandum of Points and Authorities
                                         )   in Opposition to Motion to Compel
         vs.                             )   Arbitration and for Stay
                                         )
Mazzetti & Associates, Inc., Walter      )   Date: 9/20/04
                                         )   Time: 2:00 p.m.
Vernon, Albert Ostroy and Angelica       )   Courtroom: MHP
                                         )
Graham,

                Defendants
_____

**Issues presented**

The issues are (1) whether Mr. Roderick's third cause of action for declaratory relief should be sent to arbitration at this time, (2) whether portions of Mr. Roderick's first cause of action for ERISA violations should be dismissed or stayed for failure to exhaust intra-plan remedies, and whether (3) the remainder of this case should be stayed, pending the outcome of (1) or (2). Mr. Roderick submits that the answer to each question is an unqualified "No".

SUMMARY OF ARGUMENT:  Arbitration should not be compelled, at present, as to any of Mr. Roderick's three causes of action.

Mr. Roderick's first cause of action is for statutory ERISA violations (1) with respect to Mr. Roderick's wrongful termination (ERISA discrimination) and (2) for misrepresentations made by the ESOP plan administrators to the 85 participants in the plan, including Mr. Roderick. Defendant's plan is not an ESOP—and never has been—because the plan has never owned any employer stock. ERISA does not require arbitration by individual employees claiming statutory violations like these, as opposed to claims for contract-like plan benefits. Mr. Roderick has not agreed to arbitrate these claims. Under ERISA, he need not exhaust intra-plan remedies. As a practical matter, however, exhaustion has been achieved, through defendant Vernon's letter for the ESOP stating that the Employee Stock Ownership Plan has never owned any employer stock. This is contrary to ERISA, to the Plan documents, and to the representations made to Mr. Roderick and the other ESOP participants. That is the crux of the ESOP plan's ERISA problem, and further "exhaustion" cannot change the issue. Under the circumstances, further intra-plan review would be futile.

Mr. Roderick's second cause of action is under California's Fair Employment and Housing Act (FEHA), alleging age discrimination as a substantial factor in the termination of Mr. Roderick's employment.

Mr. Roderick is not required to arbitrate this statutory civil rights claim. Nor has he made any agreement to do so.

Mr. Roderick's third cause of action--- involving the Mazzetti & Associates, Inc. Stock Purchase Agreement--- *does* involve arbitration of a stock price issue. Mr. Roderick seeks declaratory relief to determine, *inter alia*, whether the Stock Purchase Agreement plan is governed by ERISA, whether the arbitration contemplated satisfies the due process requirements articulated by the California Supreme Court, and which issues are arbitrable and which are reserved for the Court or the jury in this action. Contrary to the thrust of defendants' motion, these questions are for the Court to decide as an initial matter and not in the process of post-arbitration review. These issues must be adjudicated before any arbitration is appropriate, not afterwards. Accordingly, the Court should direct the parties to request jointly that the AAA withhold further action at this time. Where, as here, the arbitration agreement is silent as to who decides arbitrability, the Court, rather than the arbitrator, must decide the arbitrability questions. *First Options v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 1924 (1995).

Because ordering arbitration would be the wrong decision as to each individual cause of action, there is no basis for staying this proceeding or any aspect of it. Nothing within the scope of the arbitration agreement will resolve the claims for age discrimination or ERISA violations. In addition, a stay would not further the public interest. Proper functioning of the ESOP plan concerns 85 participant-employees. The Stock Purchase Agreement plan impacts an additional unspecified number of employees and their dependents. The interests of these people would not be well served either by delegating the ERISA compliance issues to an arbitrator or by delaying progress on ERISA compliance, pending arbitration of the unrelated stock price issue.

The evidence shows that the Stock Purchase Agreement is an ERISA plan under the *Donovan* test

Memorandum in opposition to motion to compel arbitration

that has been adopted by every Court of Appeal addressing the issue, including the Ninth Circuit. It would

be wholly inappropriate to compel arbitration of a portion of the claim one employee, Mr. Roderick, when

the plan as a whole is in total noncompliance with ERISA. This is a matter that affects scores of individuals

and belongs before the Court for a structural remedy under ERISA, not in arbitration, perhaps to do no

more than "split the baby", yet without leaving a sufficient paper trail to enable meaningful judicial review.

      Similarly, Mr. Roderick's course of communications with the American Arbitration Association

shows that the AAA arbitration would violate all four due process criteria identified by the California

Supreme Court in *Armendariz v. Foundation Health Services*, 24 Cal. 4th 83 (2000). Because the arbitration

agreement is not a contract that a court would specifically enforce under generally applicable contract law,

defendants' motion to compel arbitration and for stay should be denied.

## Relevant Facts

      Mr. Roderick is an engineer who, at age 63, was abruptly fired by Mazzetti and Associates, Inc.

when he returned from a scheduled vacation on the Monday before last Thanksgiving. The stated reason of

poor job performance is demonstrably false. In six years and three months of employment, Mr. Roderick did

not have a single performance review, warning or complaint his job performance. Mr. Roderick contends

that age and ERISA discrimination played a substantial part in that decision, because (1) the stated reason

of bad job performance is false; (2) because Bill Mazzetti had initiated the discussion topic of Mr.

Roderick's  "retirement" in an earlier conversation with Mr. Roderick concerning a project they were working

on together; (3) because Mazzetti and Walter Vernon, the two who effected the firing, are in their 40's,

while Mr. Roderick was 63 at the time, and (4) because by firing Mr. Roderick, rather than waiting until he

chose to retire, the Company (of which Mazzetti and Vernon are major stockholders) attempted to forfeit

some of the equity that Mr. Roderick acquired in Company stock through the Company's stock purchase

Memorandum in opposition to motion to compel arbitration

4

plan, rather than paying him the fair market value for his equity. Similarly, with respect to the ESOP, by firing Mr. Roderick early, rather than waiting for him to retire, the principals at Mazzetti & Associates, Inc. hoped to hide the fraudulence of their plan. Roderick declaration at paragraph 2.

Mr. Roderick purchased the stock under the Mazzetti & Associates, Inc. Stock Purchase Agreement with his own money and opposes any effort to pay him less than the full value for it, if he is forced to sell. He is skeptical of the valuations generated by the Company's accountants. The Agreement's valuation formula is tied to the Company ESOP, which is problematic as discussed in the next paragraph. The ESOP, Stock Purchase Agreement and the Company as a whole are all run by the same people: Walter Vernon and Bill Mazzetti. These were also the same people who fired Mr. Roderick without warning. Roderick declaration at paragraphs 2,3 and 5.

The terms of the Stock Purchase Agreement transaction were presented to Mr. Roderick on a non-negotiable basis. Roderick declaration at paragraph 4. The course of dealings with the American Arbitration Association shows that the AAA is insisting on applying Commercial Rules of arbitration and operating under expedited procedures. Counsel for Mr. Roderick did not agree with these ideas. After both sides had fully briefed the issues, the AAA avoided a reasoned decision by disingenuously claiming to have fully ruled earlier, *even though defendant had not even submitted a brief at the time of this supposed ruling!*  In doing so, the AAA reneged on an express commitment to review the rules and procedures questions. See the Faust declaration at paragraphs 12, 14 and 20.  By engaging the AAA, Mr. Roderick has provided the Court with an evidentiary basis for ruling on the arbitrability issues pleaded in the third cause of action.

On the Company Employee Stock Ownership Plan question, investigation, including the arbitration investigation discussed above, revealed that the plan is not a genuine ESOP, because it has never owned any employer stock. During the two years preceding Mr. Roderick's termination, the Company repeatedly

Memorandum in opposition to motion to compel arbitration

represented that the opposite was the case. The head of the ESOP Committee, defendant Walter Vernon, has explicitly stated the Plan's position on this issue in responding to Mr. Roderick's claim. Following this communication, counsel for Mr. Roderick wrote to counsel for the Company, asking why further intra-plan review would not be futile. No response has been provided to this question.

## ARGUMENT

1. <u>The ERISA claims are not subject to arbitration</u>

a. <u>The ERISA discrimination claim is not subject to arbitration</u>

ERISA does not require arbitration of statutory claims or for plan wide violations, as opposed to a claim for denial of individual benefits. *Graphic Communications v. GCIU*, 917 F2nd 1184, 1187 and FN 5 (9th Cir. 1990); *Amato v. Bernard*, 618 F2nd 559, 568-569(9th Cir. 1980); *Amaro v. Continental Can*, 724 F 2nd 747, 752 (9th Cir. 1984).

Nor is there any duty to arbitrate statutory causes of action that are not specifically identified in the arbitration agreement. *Renteria v. Prudential,* 113 F. 3rd 1104, 1108 (9th Cir. 1997).

b. <u>Neither the Plan documents nor ERISA require exhaustion of intra-plan remedies</u>
The language of the ESOP plan makes further intra-plan review optional for the employee, not mandatory. Rice declaration, Exhibit 12 at 25.4. Defendant Vernon's letter for the ESOP Committee (Exhibit 14 to the Rice declaration) irrevocably sets forth the defendants' position as to the ESOP's non-ownership of Company stock. There is no reason to seek reconsideration or further review of this decision, which is now an historical given.

Mr. Roderick's wrongful termination and plan wide breach of fiduciary duty claims are non-benefit claims under ERISA §510, enforced through §502(a)(3). The Ninth Circuit does not require exhaustion of remedies for statutory §510 claims. *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir. 1984) (even

Memorandum in opposition to motion to compel arbitration

collective bargaining agreement grievance and arbitration provisions need not be exhausted before

pursuing a §510 claim).

c. <u>The ESOP claim has been exhausted to the point of futility</u>

The exhaustion doctrine has a futility exception, even as to contract-like, benefit claims. To prove

the exception, the plaintiff must show that further intra-plan appeal was certain to be denied. *Diaz v. United*

*Agricultural*, 50 F.3d 1478, 1485 (9th Cir. 1995). Here, that standard has been met. Further review cannot

change the ESOP's failure to acquire Company stock. Similarly, the ESOP Committee does not possess

the authority to reverse the wrongful termination of Mr. Roderick's employment. As the court said in

*Schleibaum v. Kmart Corporation*, 153 F.3d 496, 499 (7th Cir. 1998),  "the ERISA claims process is not

designed to be an endurance contest, where an employee must continue to appeal" without purpose.

d. <u>Defendant's "ESOP" is not a genuine ESOP plan</u>

An ESOP is an Employee Stock Ownership Plan. 26 U.S.C. §4975(f)(7); 29 CFR 2550.407d-6

(Definition of the term "employee stock ownership plan"). If the Plan does not own any stock in the

company where the employee-beneficiaries work, then it is not an ESOP. An ESOP is designed specifically

to hold primarily employer securities. An "annual valuation" of the employer securities is required; no

exception is provided because no legitimate ESOP would ever *not* own employer securities. Internal

Revenue Manual at 4.72.8.7 (07/31/2001) (ESOPs must satisfy annual valuation requirements of Revenue

Ruling 80-155).

Computer-assisted research of Ninth Circuit and United States Supreme Court decisions finds no

support for defendants' claim of an "incubatory" ESOP that operates for years without the employees

owning any of their employer's stock. Compare, Exhibit 15 to the Rice declaration, Rice letter dated 5/25/04

at page 2, referring to the ESOP's "incubatory phase". Further, defendants' current posture is not how the

Plan was represented to the employees, or in the plan documents. Participants in an ESOP are supposed

Memorandum in opposition to motion to compel arbitration

to know that when they go to work, their efforts will be rewarded through "sweat equity" that adds value to their ownership interest in Company stock.

Thus, the Mazzetti & Associates, Inc. plan is not a genuine ESOP, because it doesn't own Company stock—and never has-- contrary to what the fiduciaries told the employees, contrary to the plan documents, and contrary to ERISA.

2. <u>The FEHA claim for age discrimination is not subject to arbitration.</u>

Mr. Roderick has no duty to arbitrate his age discrimination claim, because that claim is not covered by the arbitration clause. *Renteria v. Prudential,* 113 F. 3rd 1104, 1108 (9th Cir. 1997).

Statutory rights waived must be listed as foundation to knowing and intelligent waiver claim. *Cheng-Canindin v. Renaissance Hotel Group,* 50 Cal App 4th 676, 682, 691-692. An arbitration clause is not enforceable as a waiver of Title VII trial rights if civil rights claims are not listed in the agreement. For purposes of arbitrability, FEHA claims are the equivalent of Title VII claims. *Prudential v. Lai*, 42 F.3rd 1299, 1303 and FN 1, 1305 (9th Cir. 1994).

3. <u>The declaratory relief issues must be adjudicated before arbitration, not afterwards.</u>

Which issues are arbitrable, if any, is a question for the Court to decide, not the arbitrator. *Litton Financial v. NLRB* 501 US 190, 208 (1991); *Three Valleys Water District v. Hutton* 925 F2nd 1136, 1140-1141 (9th Cir. 1991)  (Court decides whether there is an enforceable agreement to arbitrate).

The existence of an agreement to arbitrate, as opposed to an agreement rendered unenforceable by unconscionability, is also a question for the Court. *Wagner v. Stratton* 86 F 3rd 1046, 1048 (9th Cir. 1996) (decided under Washington law).

The legality of the agreement to arbitrate must first be tested judicially before contractual disputes may be arbitrated. *Green v. Mount Diablo*, 207 Cal. App. 3rd 63, 64, 66-67, 73 (1989). In the first instance, and not as a matter of post-arbitration review, the Court, not an arbitrator, must determine the enforceability

Memorandum in opposition to motion to compel arbitration

8

of the arbitration agreement.*Blake v. Ecker,* 93 Cal. App. 4th 728, 741 (2001).

Mr. Roderick risks losing his rights, if he does not speak up now to preserve them.  Under *Orion Pictures v. Writer's Guild*, 946 F2nd 722, 725 (9th Cir 1991), a plaintiff cannot submit questions of arbitrability to the AAA without losing her right to *de novo* judicial review of arbitrability issues, including those arising from legal issues under the ERISA statute. 946 F. 2nd at 725. Thus, Mr. Roderick faces a slippery slope: if he submits too much to arbitration, then he loses his court rights. Conversely, as plaintiff, Mr. Roderick (per *Green Tree v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 522 (2000)) has the burden of proof on showing the unsuitability of issues for arbitration and the excessiveness of arbitration costs. Accordingly, Mr. Roderick was required to engage the AAA, in order to provide the Court with an evidentiary foundation upon which to rule.

Mr. Roderick asks that the Court make the arbitrability determinations, ahead of the arbitration, under the third cause of action for declaratory relief.

a. The Stock Purchase Agreement is an ERISA plan.

Whether an employee benefit arrangement is a plan under ERISA is decided by reference to the criteria identified in *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir. 1982) (en banc). In *Donovan*, the court held that an ERISA plan consists of the following elements: (1) identification of the intended benefits; (2) identification of the intended beneficiaries; (3) the source of financing; and (4) a procedure for obtaining benefits. On the face of the document alone, the Mazzetti & Associates, Inc. Stock Purchase Agreement satisfies each element, as discussed more fully below.

The *Donovan* court also held that, although the mere purchase of insurance by the employer does not create a plan, the purchase of insurance is evidence of the existence of a plan. Insurance as a financing mechanism [*Donovan* element #3] is implemented here through sections 5.2-5.4, 8.2(a) and 9 ("Purchase of Insurance") of the Stock Purchase Agreement, Exhibit 1 to the Rice declaration. Insurance means risk

Memorandum in opposition to motion to compel arbitration

management, which connotes the ongoing administration that characterizes not only the existence of employee benefits, but also the presence of an employee benefits *plan*.

Finally, the *Donovan* court held that a mere decision to extend benefits does not constitute a plan; rather, it is the implementation of that decision that becomes the plan. The Mazzetti & Associates, Inc. Stock Purchase Agreement has been fully implemented within the meaning of *Donovan*.

The *Donovan* test has been adopted by every circuit court that has considered the issue, including the Ninth Circuit. *Blau v. Del Monte Corp.*, 748 F.2nd 1348, 1352 (9th Cir. 1984) *cert. den.* 106 S.Ct. 183 (1985); *Credit Managers Ass'n of Southern Cal. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987). See also *Williams v. WCI Steel Company, Inc.*, 170 F.3d 598, 602 and FN 1 (6th Cir. 1999). *Ed Miniat Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d 732, 739-740 (7th Cir.), *cert. denied,* 107 S.Ct. 3188 (1986); *Memorial Hospital Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir. 1990); *Northwest Airlines v. Federal Ins. Co.*, 32 F.3d 349, 354 (8th Cir. 1994); *Demars v. CIGNA Corp.*, 173 F.3d 443, 445 (1st Cir. 1999)

Here, the *Donovan* test is fully satisfied, and the Stock Purchase Agreement should be characterized as an ERISA plan.

1. The intended benefits are the ownership of equity in Mazzetti & Associates, Inc., as well as the opportunity to add value to that equity by contributing at work every day.

2. The intended beneficiaries are the shareholder participants, as well as surviving spouse or heirs as provided in Recital B and sections 8.1, 8.2, 12 and 16 of the Stock Purchase Agreement.

3. Financing is sourced in a number of ways. The employee-participant provides money when she pays for her stock initially. Insurance is to be purchased to provide money upon the death or retirement of large shareholders. See sections 8 and 9 of the Stock Purchase Agreement. To the extent the plan elects to pay an exiting shareholder over time, the shareholder provides a type of seller financing. See section 8.4 (b) of

Memorandum in opposition to motion to compel arbitration

10

the Stock Purchase Agreement.

4.  Sections   of the Stock Purchase Agreement specify the procedure for obtaining benefits: certain events trigger re-purchase of shares (see the Recitals and sections 3, 4 and 5); the plan elects whether to pay cash or give a note for the price (sections 8.2 (b), 8.3 (b) and 8.4 (b)), and also potentially through insurance proceeds (section 9). In the event of disagreement, the stated recourse is to arbitration (section 19).

Once these elements are established, there is an ERISA plan, provided that the arrangement entails ongoing administration of benefits. In *Fort Halifax Packing Co. v. Coyne*, 107 S.Ct. 2211 (1987), the Supreme Court considered a Maine statute requiring an employer to pay a one time severance benefit to employees when a plant closed. The Court noted that Maine's law only required a one-time payment of a sum certain, upon the occurrence of a single event, an event that may never occur. Because there was no ongoing administrative scheme or requirements or need to exercise discretion, the Court held this may be a benefit described by ERISA, but it was not a benefit provided by an ongoing plan. "Congress preempted state laws relating to *plans*, rather than simply to *benefits*." 107 S. Ct. at 2215-2216. (Emphasis in original).

Here, the evidence shows that Stock Purchase Agreement operates an ongoing administration. Some administration is episodic, triggered by an employee-shareholder being fired or quitting, or dying, or retiring. See sections 3, 4, 5 and 6 of the Stock Purchase Agreement. Other administration is periodic, such as the periodic payments required when the plan elects to re-purchase employee shares over time. See sections 8.2 (b), 8.3 (b) and 8.4(b). Still other aspects of administration are ongoing continually, such as the purchase of insurance, payment of insurance premiums and renewals of policies. See section 9. Clearly, the Mazzetti & Associates, Inc. Stock Purchase Agreement satisfies the *Fort Halifax* criteria.

b. The Absence of Formal ERISA Compliance Does Not Preclude a Plan

Because ERISA requires that plans have certain formalities, file certain forms and jump through

Memorandum in opposition to motion to compel arbitration

11

certain hoops, it is sometimes assumed that the failure to do these things would argue for the non-existence of a plan. To the contrary: the cases consistently hold that the failure to follow the formalities will not prevent the plan from being a plan. As long as the *Donovan* elements are met and there is a *Fort Halifax* plan of administration, the law recognizes an ERISA plan. *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir. 1991); *Blau v. Del Monte Corp.*, 748 F.2nd 1348, 1352 (9th Cir. 1984) *cert. denied*, 106 S.Ct. 183 (1985); *Scott v. Gulf Oil Corporation*, 754 F.2d 1499, 1503-1504 (9th Cir. 1985).

c.   The arbitration clause should not be specifically enforced under ERISA

A motion to compel arbitration is an action for specific performance. *Green v. Mount Diablo*, 207 Cal. App. 3rd 63, 69 (1989). Here, the Stock Purchase Agreement is an employee benefits plan that is out of compliance with ERISA. Specific performance should be denied, because of defendant's violation of the reporting and disclosure requirements of ERISA.

ERISA does not require arbitration of statutory claims or for plan wide violations. *Graphic Communications v. GCIU*, 917 F2nd 1184, 1187-1188 (9th Cir. 1990); *Amato v. Bernard*, 618 F2nd 559, 568-569 (9th Cir. 1980); *Amaro v. Continental Can*, 24 F 2nd 747, 752 (9th Cir. 1984).

 A taking of Mr. Roderick's stock by the Plan without using full and fair procedures would be a denial of due process. 29 U.S.C. § 1133(2) of ERISA mandates a full and fair intra-plan review process. *Friedrich v. Intel*, 181 F3rd 1105 (9th Cir.1999). However, the Mazzetti & Associates, Inc. Stock Purchase Agreement provides only arbitration under the AAA's commercial rules. It has already been adjudicated that the AAA's commercial rules do not satisfy due process standards. *O"Hare v. MRC*, 107 Cal App 4th 267, 272 et seq. (2003).

Plaintiff is entitled to a fundamentally fair hearing. *Sunshine Miming v. United Steelworkers* 823 F2nd 1289, 1295 (9th Cir. 1987). ERISA requires any claims procedure to be full and fair. 29 CFR 2560.503.1(f). Conversely, the Stock Purchase Agreement, calls for AAA arbitration under the commercial

Memorandum in opposition to motion to compel arbitration

rules, combined with expedited procedures, no assurance of discovery, very limited hearing and briefing opportunities, no subpoenas for compelling witnesses at hearings, and so forth.  Here, the employee is given no assurance of a reasoned decision that permits meaningful review. That is not a lawful claims process under the Department of Labor's ERISA regulations. 29 U.S.C. §133; 29 CFR 2560.503-1(b)(1).

The Stock Purchase Agreement's formula of book value violates ERISA by forfeiting part of the full value of the employee's Company stock.  Because Mr. Roderick bought the stock with his own money, his full equity is protected by ERISA. See 29 U.S.C. §1053 (1)  [Stock Purchase Agreement account is "derived" from Mr. Roderick's own contribution]. For the plan to pay less than full value to the participant in a forced sale of these assets would violate the non-forfeiture requirement of 29 U.S.C. §1053.

In addition, ERISA, 29 U.S.C. §1133 does not allow an employee to be charged half of the AAA arbitrator's fee, much less run the risk of all the fees. *Bond v. Twin City Carpenters*, 307 F 3rd 704, 706 (8th Cir 2002). Indeed, no fees are chargeable for in-house review under §1133's "full and fair" standard. Here, commercial arbitration as the first and only review step under the Plan. This is far different from imposing an arbitrator's fee in a proceeding held in lieu of a judicial review of the trustee's intra-plan decision. There, the statutory full and fair review has already been provided, and it is only further review of that review that is being processed.

ERISA does not allow the employer-plan sponsor to determine unilaterally the price to be paid for an involuntary purchase of an employee's equity account, by conclusively presuming the fair value of the employee's property to be the opinion of the Company's hired CPA. To the contrary, the ERISA sections of the Internal Revenue Code require a "qualified independent appraiser" to set the value of Company stock. 26 U.S.C. § 401 (a) (28) (C). Evaluated as an ERISA plan, the Stock Purchase Agreement's method of determining account value fails the "full and fair" standard. Accordingly, the Stock Purchase Agreement's

Memorandum in opposition to motion to compel arbitration

13

arbitration provision should not be specifically enforced.

d. The Stock Purchase Agreement is not specifically enforceable under California contract law.

Whether analyzed under the Federal Arbitration Act or under California law, California defenses to a contract action are applicable to oppose a petition to compel arbitration. *Chan v. Drexel Burnham*, 178 Cal. App. 3rd 632, 639-640 (1986).Similarly, California law determines whether there is an enforceable contract to arbitrate, regardless whether jurisdiction lies under the FAA or under the California arbitration act. *Cheng-Canindin v. Renaissance Hotel Group,* 50 Cal App 4th 676, 691-692 (1996).

A motion to compel arbitration is an action for specific performance. *Green v. Mount Diablo*, 207 Cal. App. 3rd 63, 69 (1989). Specific performance will not be ordered of a contract that is not "just and reasonable".  *Saika v. Gold* 49 Cal 4th 1074.1079-1080 (1996). In *Saika*, a one-sided trial de novo clause rendered the arbitration agreement unenforceable. Id. at 1077.

The same kind of unfairness is at work here.

The AAA arbitration proposed under the Stock Purchase Agreement is a one-sided arrangement, where the employee/shareholder needs discovery of information, but the respondent/employer needs no discovery from the employee. The employer already has nearly all the relevant documents. Similarly one-sided are the parties' respective needs for, and powers to obtain, witness attendance absent subpoena at the arbitration hearing: an employer can order his employees, as well as hired Plan professionals like CPA's, to show up for a hearing, but an employee has no such power.

Similarly one-sided are the AAA's Commercial Rules and the commercial fee schedule associated with those rules: the defendant is "commercial", but the plaintiff is not; the costs and risks of bearing the other side's costs are substantively burdensome on the individual employee, but not on the employer respondent.

The Stock Purchase Agreement arbitration process fails to protect the employee's due process

Memorandum in opposition to motion to compel arbitration

rights, as an employee working in California. Mr. Roderick, abruptly fired, now faces being deprived involuntarily of his equity as well, by being forced into an unfair procedure to extract his stock from him, without paying fair market value. This procedure fails the due process standard articulated by the California Supreme Court in *Armendariz v. Foundation Health Services,* 24 Cal. 4th 83, 103-104 (2000).

In *Armendariz*, the Court ruled that an unconscionability defense may invalidate an agreement to arbitrate. Id. at 114. Contracts that require employees to arbitrate their disagreements with their employers are unenforceable if they lack "essential fairness". *Armendariz*, 24 Cal. 4th at 90-91. Both procedural and substantive unconscionability must be proven. Id.

I. Procedural Unconscionability

Procedural unconscionability is characterized by the absence of meaningful negotiation. Under *Armendariz,* procedural unconscionability is proved by a contract of adhesion between employer and employee. Id. at 92.

*Armendariz* held that unconscionability analysis begins with the question whether there is a contract of adhesion. Id. at 113. The *Armendariz* Court implicitly equated "employment contract" as characterized by a power relation that inhibits meaningful bargaining, i.e., any contract between an employer and employee. Id. at 98. Similarly, at 116, citing *Stirlen v. Supercuts* 51 Cal. App. 4th 1519 (1997), the *Armendariz* Court recognized the existence of a contract of adhesion, even with a high level employee, where there has been no opportunity to negotiate.

Under *Armendariz*, a contract of adhesion between an employer and employee raises a presumption of substantive unconscionability. Here, the AAA tried to avoid the application of this principle to the Stock Purchase Agreement by claiming, without any evidentiary support, that Mr. Roderick has had an opportunity to negotiate the terms of that document with his employer. See the AAA's letter dated March 31, 2004, Exhibit 23 to the Faust declaration. The AAA's "finding" cannot survive scrutiny under any standard of review. The first page of the Stock Purchase Agreement document unambiguously states, "Robin Roderick…does hereby agree to be bound by each and every one of the provisions contained in the Stock Purchase Agreement", with the adhesionary terms attached in full behind the first page. See Exhibit 1, page 1 to the Rice declaration. Thus, Mr. Roderick was given no opportunity, other than to "take it or

Memorandum in opposition to motion to compel arbitration

15

leave it".  Roderick declaration at paragraph 4.

To apply the commercial rules in this setting is to turn the clock back a century. The distinction between employment rules and commercial rules turns on whether there is sufficient equality of bargaining power between the parties so that freedom of contract is a reality that allows them to bargain out their own terms or, conversely, whether there is an unequal power relation, reflected in the traditional categories of master and servant. The era of substantive due process and illusory freedom of contract has passed; today, the law recognizes that it must serve a protective function to remedy overreaching by the power-holder in the relationship, the employer. Compare *Lochner v. New York*, 198 U.S. 45 (1905).

The AAA's handling of this issue is troubling, in that it reflects not only the organization's structural bias towards accommodating the employer's interest in opting for the commercial rules, but also actual unfair procedure in practice, first jumping to the commercial characterization without any evidentiary basis, and then reneging on a commitment to review that characterization. See the Faust declaration at   :  .

Even before *Armendariz*, California has long recognized the defense of unconscionability to a motion to compel arbitration. *Graham v. Scissor-Tail* (1981) 28 Cal. 3rd 807, 820. The defense applies to contracts of adhesion like the Stock Purchase Agreement, even in a commercial setting. Id. at 817 and FN 13.

The *Graham* concept of contract of adhesion is applicable to the Stock Purchase Agreement. *Stirlen v. Supercuts*, 51 Cal. App. 4th 1519,1530, 1533 (1997). As the Ninth Circuit has ruled, procedural unconscionability means inequality of bargaining power as reflected in a standard form agreement, drafted on behalf of the employer, and presented to the employee on a "take it or leave it" decision basis. *Circuit City v. Adams*, 279 F 3rd 889, 893-895 (9th Cir 2002) (California law). That amply describes Mr. Roderick's experience with the Stock Purchase Agreement.

II. Substantive Unconscionability

*Armendariz* also identified components of substantive unconscionability that would deny due process of law to an arbitrant. Due process applies not only because here, as in *Armendariz*, arbitration is sought to be compelled as a substitute for the normal legal remedy before judge and jury, but also because arbitration is invoked here as a compulsory process for depriving Mr. Roderick of what is unquestionably a Constitutionally-protected property right: Mr. Roderick's ownership interest in the Company stock that he paid for with his own money, has owned for years, and has now been required to sell as a direct consequence of the involuntary termination of his employment with the Company. Roderick declaration at

Memorandum in opposition to motion to compel arbitration

paragraph 3.

Under *Armendariz*, due process requires:

1. A written decision that permits reasonable judicial review.

2. Adequate discovery.

3. Limits on costs charged to the employee.

4. A neutral decision maker.

24 Cal. 4th at 91. It has already been adjudicated that the AAA's commercial rules do not satisfy the *Armendariz* due process requirements *O"Hare v. MRC*, 107 Cal App 4th 267, 272 (2003). That is also made evident by applying the due process standards to the terms of the Stock Purchase Agreement.

1. <u>Written decision sufficiently reasoned</u>

Contrary to *Armendariz*, arbitration under the Stock Purchase Agreement, using the AAA commercial rules with expedited procedures does not assure a written decision that would allow meaningful judicial review. See the AAA rules, Exhibit    to the Faust declaration. This due process standard is especially important in an employment case, like the present one where there is a discrimination issue. Compare, *Mercurio v. Superior Court*, 96 Cal App 4th 167, 180 (2002).

2. <u>Adequate discovery</u>

The unfairness of using the expedited rules that lack any discovery guarantee is discussed above at page 13. This arrangement is fundamentally unfair, because the individual Plan participant needs discovery, but the Plan does not. This unfairness may not always be apparent on the contract's surface, but that is not how substantive unconscionability is determined. Compare, *Ingle v. Circuit City*, 328 F3rd 1165, 1174 (9th Cir. 2003) (one-sided arbitration agreement is not enforceable, in light of  "actual effects" of contract provisions); *Blake v. Ecker* (2001) 93 Cal. App. 4th 728, 743, 746 (face of contract often not enough to decide question of unconscionability).

Here, Mr. Roderick needs sufficient discovery to be able to show the factual setting and context of the dispute: what was represented by defendants to Mr. Roderick and the other participants? How have the Stock Purchase Agreement buybacks been applied to other employee/shareholders? What have other employees been paid for their stock? What is the factual and documentary basis for the Company's CPA's opinion as to book value? What is the basis for the Company's CPA's opinion as to fair market value?

Conversely, the employer rarely needs any discovery in this kind of proceeding, so operating under the expedited procedures of the commercial rules for arbitration--with no assured right to any discovery

whatever-- works overwhelmingly to the benefit of the employer, and to the detriment of the employee-shareholder. This fails the due process standard. Compare *Ferguson v. Country Wide*, 298 F. 3rd 778, 788 (9th Cir. 2002)(one-sided discovery provisions are unconscionable).

### 3. Absence of burdensome costs

*Armendariz* held that the employer must bear the arbitration forum costs. 24 Cal. 4th at 113. Splitting the expenses in employer/employee disputes is substantively unconscionable. *Circuit City v. Adams*, 279 F 3rd 889, 893-895 (9th Cir 2002) (applying California law).

The *O"Hare* court specifically determined that the AAA Commercial Rules violate California law as to the employee costs requirement. 107 Cal App 4th 267, 272, 279-280. These costs create a barrier to forum access that frustrates enforcement of ERISA and the antidiscrimination laws. Compare, *Ferguson v. Country Wide*, 298 F. 3rd 778, 788 & FN 7 (9th Cir. 2002) (chilling effect of fees on plaintiffs).

In *O'Hare*, the employer appeared to recognize the due process problem and tried to use the AAA's Employment Rules rather than the Commercial Rules to cure the violation, but the court said no. 107 Cal. App. 4th at 281, FNs 5 and 6. See also *Shankle v. B G Maintenance*, 163 F3rd 1230, 1234-1235 (10th Cir. 1999) (improper costs of arbitration render mandatory arbitration clause unenforceable).

### 4. Neutral decision maker

Courts will not order specific performance of a contractual arbitration process that is not neutral. *Cheng-Canindin v. Renaissance Hotel Group,* 50 Cal App 4th 676, 691-692 (1996). An arbitration clause is not enforceable if it is so one-sided as to deny plaintiff an effective remedy. In *Cheng-Canindin*, the contract was unconscionable, because a fact finder was an employee of the defendant; thus, the arbiter of fact was not neutral. Id. at 687-688. Here, as discussed below, the AAA has also not acted in a neutral way; however, that is not the essential contention here. Rather, the due process problem arises because the key fact issue—the value of Mr. Roderick's stock—is conclusively determined not on the basis of adjudicated evidence, but simply by the opinion of the defendant-employer's own retained CPA. That is a lack of

Memorandum in opposition to motion to compel arbitration

neutrality in the most important issue in the arbitration, the value of plaintiff's stock. Even a biased AAA is at least a third party decision maker, but an employer's own employees are not, and neither are management's handpicked CPA's. *Cheng-Canindin v. Renaissance Hotel Group,* 50 Cal App 4th 676, 691-692 (1996). There is no neutrality in a conclusive presumption of the purported "facts" of book value or of market value, "facts" that contain a great deal of malleable opinion and which should not be conclusively established by the Company's hired hands.

This fatal flaw is exacerbated by AAA bias that is structural, institutional, and manifest. Structural bias is recognized in what the cases have labeled as "the repeat player effect". The AAA is thus tainted by a conflict of interests, which manifests itself in bias against the individual employee. See *Mercurio v. Superior Court*, 96 Cal App 4th 167, 174, 178 (2002)  (applying *Armendariz*).

The *Armendariz* Court emphasized the employer's unfair advantage with the AAA, due to "repeat player effect". 24 Cal. 4th at 115. *Mercurio*, in striking down arbitration fees against employees as oppressive, also stressed the "repeat player" effect. 96 Cal App 4th at 178, 182.

The AAA's financial interest also creates an institutional bias in favor of the Company. Individual employees do not decide to hire the AAA in a standard form contract, but companies like Mazzetti do. The AAA has every interest in upholding the choice of commercial rules made by the entity that chose to hire the AAA. Further, the commercial fee schedule shows that the AAA makes substantially more money under the commercial rules than under the employment rules. Faust declaration at Exhibit 23, final page. This financial interest or bias might be described as the "repeat payer effect".

The AAA correspondence and the Faust declaration show that the AAA's bias is not merely structural, institutional and potential, an interest or bias towards commercial rules due to higher fees or the prospects of repeat business, not merely bias in favor of the party that selected AAA unilaterally, nor merely bias favoring employers as a class in this kind of dispute, since employees will never direct additional

Memorandum in opposition to motion to compel arbitration

19

business to AAA. Instead, this bias has been actualized in the present case against the individual

employee, Robin Roderick.

III. Severability

      The issue is whether the offending arbitration provisions are correctable, or whether the provision

is permeated with flaws, and thus unenforceable. *Blake v. Ecker* 93 Cal. App. 4th 728, 743-746 (2001). As

in *Armendariz*, multiple defects mean no severability, rendering the arbitration agreement unenforceable.

*Ferguson v. Country Wide*, 298 F. 3rd 778, 788 (9th Cir. 2002). If there are two or more offending provisions,

then the courts do not attempt to save the flawed arbitration procedure. *O"Hare v. MRC*, *107* Cal App 4th

267, 282 (2003). Here, as demonstrated above, the Stock Purchase Agreement is defective as to all four

due process criteria identified in *Armendariz*. This arbitration clause should not be specifically enforced.

      A one-sided arbitration agreement is not enforceable. *Ingle v. Circuit City*, 328 F3rd 1165, 1174 (9th

Cir. 2003). Mazzetti & Associates, Inc. has no business need to use commercial arbitration rules, or

expedited procedures, or a burdensome commercial fee schedule under the Stock Purchase Agreement.

Compare *Armendariz*, 24 Cal. 4th at 117.

      However, if the Court is not yet convinced, then jurisdiction should be maintained and the motion

deferred or denied; where a fact is in dispute—such as the existence of an ERISA plan or the satisfaction of

the *Armendariz* due process standards—then the Court should hold an evidentiary hearing-- after

permitting sufficient discovery-- so that effective cross-examination may sharpen the factual question for

the Court. *Stirlen v. Supercuts* (1997) 51 Cal. App. 4th 1519, 1527 & FN 1.

e.  A stay would not serve the public interest.

      The stay sought by defendants is a form of injunction. An injunction does not lie where the public

interest would be disserved. *Reich v. Ashcroft*, 352 F.3rd 1222, 1227 (9th Cir. 2003).

      The public has an interest in the ERISA plans, because there are 85 employee/participants in the

Memorandum in opposition to motion to compel arbitration

ESOP plan, and an undetermined additional number under the Stock Purchase Agreement plan, plus their respective dependents. The ERISA issues should be resolved by the Court, not by an AAA arbitrator using expedited procedures and Commercial Rules.

If this Court, or a jury instructed by the Court, finds that a motivating factor in Mr. Roderick's firing was either the stock buyback trigger (ERISA §510) or age discrimination (FEHA), then the firing should be remedied here. Presumably, the arbitration will be rendered moot. The stock price issue should not be allowed to play the role of the tail wagging the dog.

Even if defendants were right in all they have said, still the arbitrable issue is only one part of a much larger non-arbitrable controversy before the Court, bearing on only one of three causes of action. Whether that issue will ever be reached depends on necessary foundational ERISA and arbitrability determinations by the Court. The Court must set the parameters of any AAA arbitration, whether under ERISA or as a contract between a California employer and employee.

Thus, a stay would be inappropriate as premature at this time, even if only Mr. Roderick's interests were at stake. But there is a larger issue requiring judicial supervision: remedying the two employee benefit plans, which affect the interests of the rest of the participants and their dependents.

With respect to the AAA proceeding, there is no need for a counter-stay, and plaintiff has not moved for one. Instead, the Court should rule that the Court will address the arbitration petition later, after the necessary facts have been educed. Until then, the parties should be directed not to prosecute the AAA matter further. This less formal alternative to a counter-stay against arbitration is analogous to the Court ordering, for example that the parties should propound no formal discovery until initial disclosures are complete, or that no motion to dismiss should be filed until after the first case management conference. In neither case is a formal stay necessary to accomplish the desired outcome. See *Green v. Mount Diablo*, 207 Cal. App. 3rd 63, 66-67, 74 (1989), suggesting that there is no need for a counter stay. Here, the Court

ought to rule on the declaratory relief cause of action before any arbitration.

f. <u>Defendants' cases do not support the relief requested here</u>

*Graphic Communications Union v. GCIU Plan*, 917 F. 2nd 1184, 1187 (9th Cir.1990) authorizes arbitration of "contractual" ERISA claims by individuals for plan benefits. Conversely, Mr. Roderick's first cause of action is for (1) a plan-wide failure of the ESOP to actually acquire the Company's stock as promised to the employee-participants and as required both by the plan documents and by statute and (2) wrongful termination of Mr. Roderick's employment.

Moreover, *Graphic Communications Union* only approved arbitration of an ERISA claim as a substitute for judicial review  ("arbitration following the trustee's decision", 917 F. 2nd at 1188).  Here, conversely, final and binding arbitration is offered as the first step in the non-judicial process. Unlike the *Graphic Communications Union* situation, where arbitration was no more costly than a judicial remedy, the employee-participant here under the AAA Commercial Rules risks bearing the entire arbitrator's fee, plus costs incurred by the other side, simply for exercising the only non-judicial review available to him. This kind of cost imposition, as well as the risk of shifting costs from the employer, does not satisfy ERISA's "full and fair" review requirement. See the Department of Labor regulations cited at *Graphic Communications Union v. GCIU Plan*, 917 F 2nd 1184, 1188-1189.

Unlike the case in *Fabian,* 768 F. Supp 728, Mr. Roderick's first cause of action comprises an ERISA §510 claim for discriminatory firing, as well as for plan wide breach of fiduciary duty in failing to acquire Company stock as promised. Compare, 768 F. Supp at 730 and FN 1. Moreover, in *Fabian*, the arbitration clause specifically covered the dispute between the parties. 768 F. Supp at 730-731. Conversely, Mr. Roderick has never agreed to arbitrate any ERISA violation or wrongful termination. In addition, *Fabian* is distinguishable as involving a truly commercial dispute, not a dispute between an employer and an employee.

Memorandum in opposition to motion to compel arbitration

22

With respect to the *Bird* decision cited at page 9 of defendants' Memorandum, waiver of a judicial forum for a statutory ERISA claim requires explicit reference to such claims in the arbitration agreement.

Unlike *MM Sundt*, 37 F. 3rd 1419, 1420, there is no collective bargaining agreement here that explicitly calls for ERISA arbitration. In *MM Sundt*, at 1421, there was no showing in support of a futility exception to exhaustion. Here, Mr. Vernon's letter for the plan, Rice Exhibit 14, irrevocably establishes the ESOP's position concerning acquisition of Company stock. No economy would be achieved by having the ESOP repeat this position; to the contrary, it would be an idle act of futility.

*Oster*, 869 F. 2nd 1215, 1217 is not applicable. *Oster*'s "arbitrary and capricious" standard of judicial review was not applied to the kinds of ERISA claims raised by Mr. Roderick's complaint: ERISA discrimination in employment termination, misrepresentations to the Plan participants, failure to follow the Plan documents, and non-compliance with ERISA's ESOP stock requirements. None of these issues fall with the Plan trustees' discretion under the "prudent [person]" standard.

<u>Conclusion</u>

Mr. Roderick's causes for plan-wide ERISA statutory violations, for ERISA discrimination, and for age discrimination are not subject to arbitration. The only agreement to arbitrate relates to the purchase price for the forced re-purchase of Mr. Roderick's Company stock caused by his firing. Before that agreement to arbitrate may be specifically enforced, however, the Court must decide whether the arbitration clause is part of a noncompliant *de facto* ERISA plan, and whether the agreement is unconscionable under California law. The evidence shows that the Stock Purchase Agreement is an ERISA plan under the *Donovan* test; accordingly, the plan's non-compliance precludes specific enforcement.

Moreover, the Stock Purchase Agreement is unenforceable as unconscionable under the California due process standards of *Armendariz*. Even if the Court is not yet prepared to rule finally on these issues of

Memorandum in opposition to motion to compel arbitration

23

arbitrability, nevertheless the evidence already shows that defendants have failed to meet their burden of proving that the arbitration agreement is specifically enforceable, or that a stay should issue as to the admittedly non-arbitrable issues that predominate in the case. A stay would disserve the public interest, because it would delay remedying the ESOP plan (with 85 participants) or the Stock Purchase Agreement plan (with an unspecified additional number), two bad situations that an arbitrator can do nothing to fix.

Finally, there is no mandatory internal procedure left for Mr. Roderick to exhaust under the ESOP plan. The plan administrative committee has made its position clear: they have been misrepresenting the plan to employee-participants as an Employee Stock Ownership Plan for two and a half years now; in violation of those representations, of the plan documents, and of ERISA, the ESOP has never owned any Mazzetti & Associate, Inc. stock. No further in-house procedure can change the issue.

For all these reasons, defendants' motion should be denied.

Dated: August    , 2004

                                  Respectfully submitted,

                                  _____

                                  Geoffrey M. Faust

                                  Attorney for Robin Roderick

Memorandum in opposition to motion to compel arbitration

## Table of Contents

**Issues presented**                                                                                  **2**

**SUMMARY OF ARGUMENT:  Arbitration should not be compelled, at present, as to any of Mr. Roderick's three causes of action**.                                      2

**Relevant Facts**                                                                          4

### ARGUMENT
**1. The ERISA claims are not subject to arbitration**                    **5**
**a. The ERISA discrimination claim is not subject to arbitration**      **5**

**b. Neither the Plan documents nor ERISA require exhaustion of intra-plan remedies**       **6**

**c. The ESOP claim has been exhausted to the point of futility**        **6**

**d. Defendant's "ESOP" is not a genuine ESOP plan**                    **6**

**2. The FEHA claim is not subject to arbitration**                       **7**

**3. The declaratory relief issues must be adjudicated before arbitration**       **7**
**a. The Stock Purchase Agreement is an ERISA plan.**          **7**
**b. The Absence of Formal ERISA Compliance Does Not Preclude a Plan**       **11**

**c.  The arbitration clause should not be specifically enforced under ERISA**       **11**

**d.  The Stock Purchase Agreement is not specifically enforceable under California contract law**  **13**

**I.  Procedural Unconscionability**                                       **14**
**II. Substantive Unconscionability**                                      **15**

**1. Written decision sufficiently reasoned**                            **16**
**2. Adequate discovery**                                                 **16**
**3. Absence of burdensome costs**                                        **17**
**4. Neutral decision maker**                                             **17**

**III. Severability**                                                      **19**

**e.  A stay would not serve the public interest**                        **20**

**f.  Defendants' cases do not support the relief requested here**        **21**

**Conclusion**                                                             **22**
Memorandum in opposition to motion to compel arbitration                25

1

## Table of Cases

2

3

Underlined: __United States Supreme Court__                                                __page__

*First Options v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 1924 (1995)          3

4

*Fort Halifax Packing Co. v. Coyne*, 107 S.Ct. 2211 (1987)          10, 11

*Green Tree v. Randolph*, 531 U.S. 79, 121 S. Ct. 513 (2000)          8

5

*Litton Financial v. NLRB* 501 US 190 (1991)          8

6

*Lochner v. New York*, 198 U.S. 45 (1905)          15

7

8

__Ninth Circuit Court of Appeals__

9

*Amato v. Bernard*, 618 F2nd 559 (9th Cir. 1980)          5, 11

10

*Amaro v. Continental Can*, 724 F 2nd 747 (9th Cir. 1984).          5, 6, 11

11

*Blau v. Del Monte*, 748 F.2nd 1348 (9th Cir.1984) (1985)          9, 11

*Board of Trustees v. MM Sundt*, 37 F. 3rd 1419 (9th Cir. 1994)          22

12

*Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083 (9th Cir. 1991)          11

13

*Circuit City v. Adams*, 279 F 3rd 889, 893-895 (9th Cir 2002)          15, 17

14

*Credit Managers Ass'n v. Kennesaw Life*, 809 F.2d 617 (9th Cir. 1987)          9

15

*Diaz v. United Agricultural*, 50 F.3d 1478 (9th Cir. 1995)          6

*Ferguson v. Country Wide*, 298 F. 3rd 778 (9th Cir. 2002)          17, 19

16

*Friedrich v. Intel*, 181 F3rd 1105 (9th Cir.1999)          11

17

*Graphic Communications v. GCIU*, 917 F2nd 1184 (9th Cir. 1990)          5,11,21

18

*Ingle v. Circuit City*, 328 F3rd 1165 (9th Cir. 2003)          16, 19

19

*Orion Pictures v. Writer's Guild*, 946 F2nd 722 (9th Cir 1991)          8

20

*Reich v. Ashcroft*, 352 F.3rd 1222 (9th Cir. 2003)          20

*Renteria v. Prudential,* 113 F. 3rd 1104 (9th Cir. 1997)          5, 7

21

*Scott v. Gulf Oil Corporation*, 754 F.2d 1499 (9th Cir. 1985)          11

22

*Sunshine Miming v. United Steelworkers* 823 F2nd 1289 (9th Cir. 1987)          11

23

*Three Valleys Water District v. Hutton* 925 F2nd 1136 (9th Cir. 1991)          8

24

*Wagner v. Stratton* 86 F 3rd 1046 (9th Cir. 1996)          8

25

Memorandum in opposition to motion to compel arbitration

Other federal courts

*Bird v. Shearson*, 926 F. 2nd 116 (2nd Cir. 1991)                                    22

*Bond v. Twin City Carpenters*, 307 F. 3rd 704 (8th Cir 2002)              12

*Demars v. CIGNA Corp.*, 173 F.3rd 443 (1st Cir. 1999)                          9

*Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir. 1982)              3, 8, 9, 11, 22

*Ed Miniat Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2nd 732 (7th Cir.), *cert. denied,* 107 S.Ct. 3188

(1986)                                                                                       9

*Fabian v. Volk,* 768 F. Supp 728 (ND Cal. 1991)                                   21

*Memorial Hospital Sys. v. Northbrook Life Ins. Co.,* 904 F.2nd 236 (5th Cir. 1990)  9

*Northwest Airlines v. Federal Ins. Co.*, 32 F.3rd 349 (8th Cir. 1994)        9

*Schleibaum v. Kmart Corporation*, 153 F.3d 496 (7th Cir. 1998)           6

*Shankle v. B G Maintenance*, 163 F. 3rd 1230 (10th Cir. 1999)             17

*Williams v. WCI Steel Company, Inc.*, 170 F.3rd 598 (6th Cir. 1999)       9


California Supreme Court

*Armendariz v. Foundation Health Services*, 24 Cal. 4th 83 (2000)          *passim*.

*Graham v. Scissor-Tail* 28 Cal. 3rd 807 (1981)                                  15

*Saika v. Gold*, 49 Cal 4th 1074 (1996)                                            13


Other California courts

*Cheng-Canindin v. Renaissance Hotel Group,* 50 Cal App 4th 676 (1996)      7, 13, 18

*Green v. Mount Diablo*, 207 Cal. App. 3rd 63 (1989)                      8, 11, 13, 21

*Blake v. Ecker,* 93 Cal. App. 4th 728 (2001)                             8, 16, 19

*O"Hare v. MRC*, 107 Cal App 4th 267 (2003)                              11, 16, 19

*Chan v. Drexel Burnham*, 178 Cal. App. 3rd 632 (1986)                   13

*Stirlen v. Supercuts* 51 Cal. App. 4th 1519 (1997)                      14, 15, 19

*Mercurio v. Superior Court*, 96 Cal App 4th 167 (2002)                  16, 18

Memorandum in opposition to motion to compel arbitration                      27