1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBIN RODERICK

                Plaintiff,

       v.

MAZZETTI & ASSOCIATES, INC.,
WALTER VERNON, ALBERT OSTROY,
AND ANGELICA GRAHAM

                Defendants.

_____/

No. C 04-2436 MHP

**ORDER**
**Motion to Confirm Arbitration Award**
**Motion for Leave to File First Amended**
**Complaint**

On June 21, 2004 plaintiff Robin Roderick filed this action against defendants ("Mazzetti") alleging wrongful termination, age discrimination, and breach of fiduciary duty in violation of the Employment Retirement Income Security Act ("ERISA") and the California Fair Employment and Housing Act ("FEHA").   On November 11, 2004 this court granted Mazzetti's motion to compel arbitration relating to a stock valuation dispute between the parties and stayed plaintiff's action pending arbitration.  Now before this court is defendant's motion to confirm the arbitration award and plaintiff's motion for leave to file an amended complaint.  Having considered the parties' arguments and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

     Robin Roderick was an employee of the consulting and engineering firm Mazzetti &

Associates from 1997 until 2003, when he alleges that he was terminated due to his age.  At the time of his termination, plaintiff was 63 years old and owned 20 shares of Mazzetti common stock.  The stock was subject to the company's "1994 Stock Purchase Agreement" ("SPA"), which plaintiff signed on August 4, 1998.  The agreement mandated in relevant part that upon termination or retirement, a shareholder must return his shares at a price set by "the most recent annual value determined by the Corporation's Certified Public Accountant or actuary engaged for purposes of the annual valuation of the Corporation's issued and outstanding Shares held and owned by the Corporation's Employee Ownership Plan and Trust."  See Rice Dec., Exh. 1 at  7.1.  However, the agreement also stated that if the Plan and Trust were "discontinued and no annual valuation of Shares held and owned by it is made," then the corporation's accountant should apply the "book value" of the issued and outstanding shares, as defined in the agreement.  The SPA contained an arbitration section providing that:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, San Francisco, California, and judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction.  The arbitrator shall have the discretion to award costs and attorneys' fees to the prevailing party.

Rice Dec., Exh. 1  19.1.

The parties' dispute was over the value of the plaintiff's 20 shares, as well as the legality of the SPA generally.  Following Roderick's termination, defendants offered $858.37 per share, the "book value" of the shares, because the Employee Stock Ownership Plan ("ESOP") had been discontinued and did not own any company stock at the time of plaintiff's termination.  However, in his initial complaint, plaintiff alleged that the proper share price was $2,365, based on his understanding of ESOP's holdings as well as representations allegedly made to him regarding his stock value.

On February 24, 2004, Roderick submitted the parties' dispute over the share repurchase price to arbitration, as instructed in the SPA.  Rice Dec., Exh. 2-3.  Joseph A. Lasky, from the Commercial Panel of the American Arbitration Association ("AAA"), was appointed and the arbitration proceedings commenced.  Rice Dec., Exh. 5.

2

1    On June 21, 2004 plaintiff filed the current action in federal court.  In the initial complaint,

2    he alleged wrongful termination, age discrimination, and breach of fiduciary duty in violation of

3    ERISA, as well as age discrimination in violation of FEHA.  Plaintiff believed that he had been

4    terminated from Mazzetti for two reasons: age discrimination and discrimination based on the timing

5    of his entitlement to retirement benefits (so-called "benefits-triggered" or ERISA termination).

6    Plaintiff also alleged ERISA violations stemming from the Mazzetti ESOP and the SPA: first, that

7    the ESOP was not a genuine ERISA plan because it failed to acquire company stock in a timely

8    fashion, and second, that the SPA was an employee benefit plan governed by and in violation of

9    ERISA.  In his final cause of action, plaintiff sought declaratory relief to determine the applicable

10   rules and scope of a return to arbitration on the stock dispute.

11   The parties raised before the court numerous issues for resolution: (1) whether the plaintiff

12   had exhausted mandatory administrative procedures for his ERISA claims, (2) whether the SPA

13   itself was governed by ERISA, (3) whether the arbitration clause within the SPA was legally

14   enforceable and thus whether the parties were bound to return to arbitration, (4) what the scope of

15   that arbitration should be, if the parties had to complete arbitration, and (5) whether further

16   proceedings in this court should  be stayed pending arbitration of the SPA dispute.  The court held as

17   follows: (1) by returning to arbitration, plaintiff would have exhausted all administrative procedures,

18   (2) the SPA was not an unconscionable contract but legally enforceable and did not qualify as a de

19   facto employee benefit plan governed by ERISA, (3) the parties should return to arbitration on the

20   issue of the valuation of plaintiff's 20 shares of Mazzetti common stock as well as the related issues

21   of fiduciary breach and independent management arising from corporate decisions affecting stock

22   value and (4) plaintiff's age-discrimination, FEHA and ERISA claims on the ESOP plan should all

23   be stayed pending arbitration. Memorandum & Order, No. C 04-2436 MHP, slip. op. at 6–18 (Nov.

24   9 2004).

25   Consequently, the parties returned to arbitration and hearings were held between February 7

26   and February 9, 2005.  During the arbitration proceedings, seven witnesses testified and at least

27   fifty-four documents were admitted into evidence.  Rice Dec., Exh. 1, at  3.  There was "extensive

28

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1   examination and cross-examination of witnesses including unrestricted cross and re-direct." Id.

2   Subsequently, on June 3, 2005 the arbitrator issued a tentative award or statement of decision

3   establishing that the purchase price to be paid by Mazzetti to Roderick was $987.75 per share for a

4   total of $19,755.00.  In exchange for this payment, Roderick was ordered to return to Mazzetti any

5   stock certificates in his possession or control.  The arbitrator also found that there had been no

6   breach of fiduciary obligations or independent management with regard to the determination of the

7   purchase price of the plaintiff's shares.  Id. at  11.

8       In his comments on the arbitrator's Statement of Decision, plaintiff Roderick identified two

9   "errors in calculation, matters inadvertently omitted or objectively erroneous facts" ( Rice Dec., Exh.

10  9 (quoting Statement of Decision at 11-12)) for the arbitrator to address.  First, plaintiff made some

11  additional commentary with respect to Stock Certificate 47, an issue rendered moot by Mazzetti's

12  prior withdrawal of the issue.  Second, plaintiff asserted that he was entitled to pre-award interest

13  from the date when his share price was calculated (November 2003) to the present.  The rest of

14  plaintiff's comments were with respect to a request for an award of attorneys' fees.  See Rice Dec.,

15  Exh. 9, at 2.  Defendant opposed this request for fees and submitted their own request for a fee

16  award. Rice Dec., Exh 10.

17      In the final award, the arbitrator ordered Mazzetti to pay pre-award interest on the share

18  purchase price to Roderick in an amount totaling $1,605.08. Rice Dec. Exh. 2 at 2-3.  The fees for

19  the arbitration totaled $19,500.00, and Mazzetti was ordered to pay $12,900 of this amount. Id.  The

20  request for attorneys' fees was implicitly denied because although the arbitrator considered the

21  parties' requests, there was no explicit grant.  See id. at 1.  According to the terms of the final award,

22  "all claims, and demands for relief not expressly granted herein are hereby denied."  Id. at 3.

23      Pursuant to the arbitration award, on July 26, 2005 Mazzetti sent a check payable to

24  Roderick in the sum of $21,360.08 (comprising the $19,755.00 total share price award and the

25  $1,605.08 interest awarded) to plaintiff's attorney in trust, pending receipt of the stock certificate.

26  See Rice Dec., Exh. 5.  On August 8, 2005, Mazzetti received the stock certificate for the 20 shares

27  of stock and gave the authorization to plaintiff's counsel to deliver payment to plaintiff.  See Rice

28

4

1   Dec. Exh. 6.

2      Now before the court are two motions: (1) defendant's unopposed motion to confirm the

3   arbitration award and (2) plaintiff's motion for leave to file an amended complaint.  In his proposed

4   amended complaint, plaintiff adds three new causes of action: namely the fourth, fifth and sixth

5   causes of action.  In opposition to the motion for leave to amend, defendant argues that plaintiffs

6   proposed amendments are barred by the doctrine of res judicata.  The court considers the parties'

7   arguments below.

8

9   LEGAL STANDARD

10   I.      Confirmation of an Arbitration Award

11      The Federal Arbitration Act ("the Act") requires a court considering a motion to confirm an

12   arbitration award to "grant such an order unless the award is vacated, modified, or corrected as

13   prescribed in sections 10 and 11 of [the Act]."  See 9 U.S.C. § 9; see generally Kyocera Corp. v.

14   Prudential-Bache Trade Serv., Inc., 341 F.3d 987, 997 (9th Cir. 2003) (en banc).  Section 10 of the

15   Act permits vacatur of an arbitration award only in limited contexts, notably where "the award was

16   procured by corruption, fraud, or undue means"; where "there was evident partiality or corruption in

17   the arbitrator[]"; where "the arbitrators were guilty of misconduct in refusing to postpone the

18   hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the

19   controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or

20   "where the arbitrators exceeded their powers" in granting a particular award.  See 9 U.S.C. § 10(a);

21   see also G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1105-06 (9th Cir. 2003).  Section 11 of

22   the Act, in turn, permits modification or correction of an arbitral award only in similarly

23   circumscribed instances, including where "there was an evident material miscalculation of figures or

24   an evident material mistake in the description of any person, thing, or property referred to in the

25   award"; where "the arbitrators have awarded upon a matter not submitted"; or where "the award is

26   imperfect in matter of form not affecting the merits of the controversy."  See 9 U.S.C. § 11.

27

28

5

1    II      Res Judicata and Collateral Estoppel[1]

2          The doctrine of res judicata, or claim preclusion, prohibits litigation in a subsequent action of

3    any claims that were raised or could have been raised in a prior action.  Owens v. Kaiser Found.

4    Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (citations omitted).  Under Ninth Circuit law, an

5    adjudication in a prior action serves as a bar to litigation of a claim if the prior adjudication (1)

6    involved the same claim as the later suit; (2) reached a final judgment on the merits and (3) involved

7    the same parties or their privies.  Id.; see also Blonder-Tongue Labs. v. University of Ill. Found., 402

8    U.S. 313, 323-24 (1971).

9          In determining whether two claims are identical, the Ninth Circuit employs four criteria: (1)

10   whether the rights or interests established in the prior judgment would be destroyed or impaired by

11   prosecution of the second action; (2) whether substantially the same evidence is presented in the two

12   actions; (3) whether the two suits involve infringement of the same right and (4) whether the two

13   suits arise out of the same "transaction."  Nordhorn v. Ladish Co., 9 F.3d 1402, 1405 (9th Cir. 1993);

14   Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir.), cert. denied, 459 U.S. 1087

15   (1982) (quoting Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980)).  The fourth criterion—whether

16   the two suits arise out of the same transaction—is the most important. Id. at 1202.  It is immaterial

17   whether the claims asserted subsequent to the judgment were actually pursued in the action that led

18   to the judgment; rather, the relevant inquiry is whether they could have been brought.  C.D.

19   Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987).

20         Issue preclusion, also called collateral estoppel, operates similarly but is of a narrower scope.

21   "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be

22   identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in

23   the prior litigation; and (3) the determination of the issue in the prior litigation must have been a

24   critical and necessary part of the judgment in the earlier action."  Clark v. Bear Stearns & Co., Inc.,

25   966 F.2d 1318, 1320 (9th Cir. 1992).  Collateral estoppel may be used defensively against a plaintiff

26   when the plaintiff had a "full and fair chance" to litigate the same issue against a different defendant.

27   Blonder- Tongue Lab., Inc. v. Univ. Ill. Found., 402 U.S. 313, 333, 334-38 (1971) (recognizing that

28

1    relitigation is especially wasteful in patent cases due to their length and expense); see also Parklane

2    Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329-31 (1979) (comparing defensive and offensive

3    collateral estoppel).

4            Arbitration proceedings have res judicata or collateral estoppel effect if they meet the above

5    requirements with respect to similarity of claims and issues and if they possess "the elements of an

6    adjudicatory procedure." Jacobs v. CBS Broadcasting, Inc., 291 F.3d 1173, 1178 (9th Cir. 2002)

7    (holding that an informal investigation had too few procedural safeguards to constitute an

8    adjudicatory proceeding); see also REST 2d JUDG § 83(2). The same standards governing the

9    applicability of collateral estoppel in administrative proceedings is used in determining whether an

10    arbitration possesses sufficient procedural safeguards to warrant a finding that it is an "adjudicatory

11    procedure." Id. Courts are instructed to examine factors such as: (1) whether the proceeding was a

12    judicial-like adversary proceeding, (2) whether the proceeding called for the testimony of witnesses

13    under oath, (3) whether the arbitral determination involved the application of legal rules to a set of

14    facts, (4) whether the proceedings were before an impartial hearing officer, (5) whether the parties

15    had a right to subpoena witnesses and present documentary evidence and (6) whether the arbitrator

16    maintained a verbatim record of the proceedings. Id. at 1179.

17            In determining whether the arbitration has preclusive effect, the court must "make an

18    examination of the record, if one exists, including any findings of the arbitrators." Clark, 968 F.2d at

19    1321. The court must then determine whether a rational factfinder could have come to the same

20    conclusion but based upon a different issue than that which the moving party seeks to foreclose.

21    "When the issue for which preclusion is sought is the only rational one the factfinder could have

22    found, then that issue is considered foreclosed, even if no explicit finding on that issue has been

23    made." Id. (citing Ashe v. Swenson, 397 U.S. 436, 444 (1970)). The party that seeks preclusion

24    bears the burden of demonstrating "with clarity and certainty what was determined by the prior

25    judgment." Clark, 968 F.2d at 1321 (quoting United States v. Lasky, 600 F.2d 765, 769 (9th Cir.

26    1979), cert. denied, 444 U.S. 979 (1979)).

27

28

7

1    III    Leave to Amend Complaint

2        The Federal Rules of Civil Procedure provide that leave to amend be "freely given when

3    justice so requires." Fed. R. Civ. Pro 15(a).  The Ninth Circuit has construed this broadly, requiring

4    that leave to amend be granted with "extraordinary liberality."  Morongo Band of Mission Indians v.

5    Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

6    186 (9th Cir. 1987) (Rule 15's policy of favoring amendments to pleadings should be applied with

7    "extreme liberality"); Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F. Supp.

8    1237, 1241 (N.D. Cal. 1997) ("[T]he court must be very liberal in granting leave to amend"); Poling

9    v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987) (describing a "strong policy permitting amendment").

10        Despite this liberal policy of amendment, leave will not be given where the district court has

11    "a substantial reason to deny" the motion.  J.W. Moore et al., Moore's Federal Practice § 15.14[1]

12    (3d ed. 1998) ("[D]istrict judge[s] should freely grant leave to amend when justice requires, absent a

13    substantial reason to deny").  The court may decline to grant leave where there is "any apparent or

14    declared reason" for doing so.  Foman v. Davis, 371 U.S. 178, 182 (1962); see also Lockman Found.

15    v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991).

16        The Ninth Circuit has interpreted Foman as identifying "four factors relevant to whether a

17    motion for leave to amend pleadings should be denied: undue delay, bad faith or dilatory motive,

18    futility of amendment, and prejudice to the opposing party."  United States v. Webb, 655 F.2d 977,

19    980 (9th Cir. 1981); see also Poling, 829 F.2d at 886.  The enumerated factors are not of equal

20    weight, and delay alone is insufficient to deny leave to amend.  Id. (citing Howey v. United States,

21    481 F.2d 1187 (9th Cir. 1973)).  By the same token, "[p]rejudice to the opposing party is the most

22    important factor."  Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).  However,

23    futility alone can justify the denial of a motion to amend. Bonin v. Calderon, 59 F.3d 815, 845 (9th

24    Cir. 1995).  The party opposing leave to amend bears the burden of showing prejudice.  DCD

25    Programs, at 187.  In such cases, justice does not require amendment, as leave to amend would

26    further an injustice upon the defendant.

27

28

8

DISCUSSION

I.    Confirmation of the Arbitration Award

Plaintiff Roderick does not claim that the arbitrator's decision was "procured by corruption," colored by prejudice, or otherwise problematic under section 10(a), nor does plaintiff contend that the award violates section 11.   In fact, plaintiff has submitted a non-opposition to the motion to confirm with the only objections being a blanket opposition to the "form of the proposed order." Pl's Opp. at 1.  In essence, plaintiff objects to the provision of the proposed order that would have the confirmed award operate as a judgment. However, if there is an arbitration award, and it is confirmed by a court pursuant to the parties' arbitration agreement, this confirmation necessarily operates as a judgment between the parties. Pursuant to section 9 of the FAA:

> If the parties in their agreement have agreed that a *judgment* of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified *for an order confirming the award*, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C §9 (emphasis added)

The SPA states that "judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction." All that remains, then, is for the court to review the arbitration award under the highly deferential standard posited in the Act.  Id.[2]  There is no question that the award satisfies the Act's permissive standard of review.  The parties were given ample opportunity to comment on the tentative award and nothing in that or the final award "evidences affirmative misconduct in the arbitral process or the final result"; and nothing in the award "is completely irrational or exhibits a manifest disregard for the law." Kyocera Corp., 341 F.3d at 998.  The court thus grants defendant Mazzetti's motion to confirm the arbitration award.

II    Res Judicata and Collateral Estoppel

In determining whether it is appropriate to allow for preclusion of a claim or issue from an underlying arbitration procedure, a court must first determine whether the proceedings were sufficiently adjudicatory in nature and whether the issues or claims that are now being advanced are

1   the same as those of the prior proceeding.

2       A.    Adjudicatory Nature of the Arbitration Proceedings

3         Plaintiff contends that the arbitrator's award cannot be given collateral estoppel effect

4   because the absence of a "verbatim record" of the proceedings rendered the hearings insufficiently

5   adjudicatory. Plaintiff's assert that defendants, by objecting to the production of a such a record,

6   have not met their burden of production because they are unable to "introduce a record sufficient to

7   reveal the controlling facts and pinpoint the exact issues [already] litigated." Hernandez v. Los

8   Angeles, 624 F.2d 935, 937 (9th Cir. 1980); Clark, 968 F.2d at 1321 (quoting Lasky, 600 F.2d at

9   769). However, plaintiff misconstrues the holdings in Lasky and Hernandez. A party asserting

10  preclusion bears the burden of clearly demonstrating the issues that were decided by producing a

11  "sufficient record" of the prior proceeding. Lasky, 600 F.2d at 769. Here, defendants have submitted

12  the twelve-page statement of decision which details the scope of the arbitration, the claims asserted,

13  and the background facts, and also provides an analysis of the legal and factual issues in dispute.

14  See Rice Dec., Exh. 1. Further, defendants have submitted a pre-hearing letter from the arbitrator

15  with respect to the expected issues, the briefing comments submitted by the parties to the arbitrator's

16  tentative award, the briefings submitted during arbitration, as well as the final arbitration award. See

17  Rice Dec., Exhs. 2, 8,9, 10, 11–16. There is ample documentation of the proceedings with which

18  this court may determine what issues or claims were considered and decided by the arbitrator.

19        Moreover, a verbatim record of proceedings is merely one of several factors that a court must

20  consider in determining whether a proceeding is adjudicatory in nature. Courts must also consider

21  factors such as the ability to call and cross-examine witnesses under oath, the ability to present

22  documentary evidence and the impartiality of the hearing officer. See Jacobs, 219 F.3d at 1178. The

23  current arbitral proceedings evidenced many of the Jacobs factors, and the absence of merely one of

24  these factors is not dispositive. According to the arbitrator's June 3, 2005 tentative award, the

25  hearing was conducted pursuant to the AAA rules of arbitration, and both parties presented their

26  arguments before Joseph A. Lasky, an impartial AAA appointed officer. Rice Dec., Exh. 1, at 3.

27  The testimony of seven witnesses was heard and no less than fifty-four documents were admitted

28

1    into evidence.  Moreover, "there was extensive examination and cross-examination of witnesses

2    including unrestricted cross and re-direct." <u>Id.</u>  In addition, prior to issuing an award, the arbitrator

3    prepared a statement of decision to give the parties an opportunity to respond to any errors or

4    omissions.  The arbitration hearing was not only of a sufficiently adjudicatory nature, it was also

5    eminently fair.

6         As this court has confirmed the arbitration award, the final decision of the arbitrator operates

7    as a judgment on the claims and issues presented therein. 9 U.S.C. § 9.  The proceedings were of a

8    sufficiently adjudicatory nature and thus the judgment is eligible to have res judicata effect if there is

9    an attempt to re-litigate any of the claims and issues within the preclusive scope of the adjudication.

10        B.      Similarity of Proposed Claims and Issues

11            (i).      Breach of Fiduciary Duty

12        Defendants contend that plaintiff's addition of a claim of breach of fiduciary duty is barred

13   under the doctrine of res judicata.  In this proposed amendment, plaintiff makes a breach of fiduciary

14   argument with respect to the valuation of plaintiff's stock during a repurchase by Mazzetti.  He

15   asserts that defendants were directors or "controlling shareholders . . . [who] owed a fiduciary duty

16   to non-controlling shareholders, including plaintiff." Faust Dec., Exh., 1 ¶ 97.  Plaintiff claims that

17   these defendants "caused the corporation to enter sweetheart deal contracts with themselves and two

18   controlling shareholders to provide additional payment per share upon repurchase of the defendants'

19   stock in excess of the repurchase price paid to the rest of the shareholders." <u>Id.</u> at ¶ 99.

20        However, during the arbitration, this same claim was raised and decided in favor of Mazzetti.

21   <u>See</u> Rice Dec., Exh. 13, at 4:1–18.  On November 9, 2004 this court ordered the parties to resume

22   arbitration to determine the "value of plaintiff's 20 shares of Mazzetti common stock as well as the

23   *related issues of fiduciary breach and independent management arising from corporate decisions*

24   *affecting stock value*."  Memorandum & Order, No. C 04-2436 MHP, slip. op. at 17 (Nov. 9 2004)

25   (emphasis added).   Thus the scope of the arbitration proceeding encompassed the issue of the

26   fiduciary duties owed by Mazzetti's management vis-a-vis the valuation of plaintiff's stock.

27        Further, in its brief to the arbitrator, plaintiff argued that the stock valuation employed by

28

1    Mazzetti's management had been improper because of, *inter alia*, a breach of a general fiduciary

2    duty. Rice Dec. Exh 13 at 4-7.  The arbitrator considered these arguments and found in his tentative

3    award that "there was no breach by Mazzetti of fiduciary obligations or independent management

4    with regard to the determination of the purchase price of the Claimant's 20 shares in Respondent."

5    See Rice Dec. Exh 1 at 9-11); see also Rice Dec. Exh 2 at 2–3 (re-stating this finding in the final

6    arbitration award).

7         The arbitrator has already made an explicit finding over whether an alleged breach of

8    fiduciary duties by defendants impaired the value of plaintiff's shares and thus allowing this claim to

9    go forward would undermine this prior adjudication.[3]  Under the analysis in Nordhorn, this new

10   cause of action for a breach of duty is identical to that raised in the arbitration and it is between the

11   same two parties.  The matter has been fully and fairly litigated and to re-litigate the claims now

12   would impair the rights and interests established by the arbitration.  Further, the two actions involve

13   substantially the same evidence and seek to vindicate the same right - namely the valuation of

14   plaintiff's stock so that it is on a par with that of the majority shareholders. See Nordhorn, 9 F.3d at

15   1405.  To allow plaintiff a second opportunity to re-litigate this issue would violate the important

16   principles of judicial economy and finality in the decision-making process.  Thus, plaintiff's new

17   cause of action seeking to find that  Mazzetti and its majority shareholders breached their fiduciary

18   duties to minority shareholders is precluded and may not be re-litigated in this court.

19         In the alternative, plaintiff attempts to recast his earlier claims for breach of fiduciary duty as

20   a shareholder derivative action.  In the proposed first amended complaint, plaintiff argues that "the

21   corporation has also been damaged by defendants' misconduct . . . [and that] if plaintiff is successful

22   in this action, then a substantial benefit and common fund will accrue to the corporation." Faust Dec.

23   Exh. 1, ¶¶ 97,105–106.  This new shareholder derivative claim is similarly unavailing as the doctrine

24   of res judicata bars not only re-litigation of claims that were actually pursued, but also claims that

25   could have been brought. See C.D. Anderson, 832 F.2d at 1100.  Plaintiff, by substituting the

26   Mazzetti shareholders as the plaintiffs in the action, is still barred from re-litigating an identical

27   claim that was properly decided in arbitration.  The arbitrator has determined that there was no

28

12

1  breach of fiduciary duty by the corporation or its majority shareholders and the re-casting of the

2  failed claim as a "derivative shareholder action" does not save the issue from preclusion.

3       Moreover, plaintiff lacks standing to bring such a derivative action.  Plaintiffs seeking to

4  advance a suit under a derivative theory, "must fairly and adequately represent the interests of the

5  shareholders or members similarly situated in enforcing the right of the corporation or association."

6  Fed. R. Civ. Pro Rule 23.1.  On August 26, 2005, Mazzetti shareholders unanimously declined

7  plaintiff's request to pursue this suit and rescind William Mazzetti, Jr.'s June 23, 2004 agreement, the

8  employment contract with Albert Ostroy, and "any other Stock Agreements other than the SPA."

9  Rice Dec. Exh. 18 at 1.  Further, the shareholders "ratified the acts of the directors, board of

10  directors and officers in the . . . severance agreement . . . and stock agreement decisions challenged

11  by Mr. Roderick." Id. at 3.  Thus, given the unanimous rejection of plaintiff's request to pursue this

12  suit, it cannot be said that it would be brought in the interests of any of the shareholders and thus it is

13  a complete bar to the suit.[4]

14              (ii).        Breach of Corporations Code Section 400

15       Similarly, plaintiff's proposed fifth cause of action is barred under the doctrine of collateral

16  estoppel.  Under the analysis in Clark, an issue is precluded from re-litigation if it is identical to an

17  issue that was actually decided in a prior proceeding and if that prior determination was a critical

18  and necessary part of that proceeding.  Clark, 966 F.3d at 1320.  Plaintiff now asserts that defendants

19  breached California Corporations Code section 400 because they failed to "provide stock repurchase

20  rights for plaintiff's shares equal to that paid to the controlling shareholders for their shares."  Faust

21  Dec., Exh.1 ¶110.[5]  However, this same theory was raised in arbitration as a sub-issue of the general

22  dispute between the parties as to the value of Roderick's 20 shares of Mazzetti stock.  On February

23  18, 2005, before the commencement of arbitration, the arbitrator drafted a statement of arbitrable

24  issues and made note of the fact that the determination of section 400's applicability is a subset of the

25  general dispute over stock valuation.  See Rice Dec., Exh. 8 at 2.  Indeed, in its brief to the

26  arbitrator, plaintiff argued that the stock valuation employed by Mazzetti's management had been

27  improper not only because of a general fiduciary duty but because of a breach of section 400.  See

28

13

1   Rice Dec., Exh. 13 at 4–7.  The arbitrator considered all of these arguments concluding that the

2   value to be paid for Roderick's shares was $987.75, less than the amount to which plaintiff argued he

3   was entitled.  Rice Dec., Exh 2 at 2–3.   This determination of the stock value was *the* critical issue

4   in the arbitration proceedings, and the applicability of section 400 was a necessary part of that

5   determination. Defendant has been ordered to pay plaintiff $987.75 for his shares, and as of August

6   8, 2005 he had done so.  Thus section 400 claims that are raised in the proposed amended complaint

7   and purport to secure relief for plaintiff with respect to the valuation of his stock are barred by the

8   doctrine of collateral estoppel as they seek to re-litigate an issue already decided in the arbitration.

9

10                     (iii)              Declaratory Relief

11          In the final sixth cause of action, plaintiff makes a claim for declaratory relief that "all . . .

12   non-proportional agreements [such as those enabling some shareholders of Mazzetti to receive a

13   higher repurchase price for their stock][6] are illegal and unenforceable." Faust Dec., Exh. 1 ¶¶

14   114–115.  Plaintiff argues that these agreements are not a "valid exercise of corporate power" and

15   are "an abuse of control by the controlling shareholders." Id. ¶117.  However, this new claim is also

16   barred under the doctrine of collateral estoppel as it is a veiled attempt to re-litigate the issue of his

17   stock valuation as well as the enforceability of the SPA.  Plaintiff's attempt to seek declaratory relief

18   with respect to the valuation of the stock involves the same set of evidentiary factors that was

19   considered in arbitration.  As noted in the section 400 discussion above, the "non-proportionality" of

20   the repurchase agreement was an important factor that was considered by the arbitrator in arriving at

21   the stock price of $987.75.  Further, on the issue of enforceability, this court in its prior order found

22   that the SPA was not procedurally or substantively unconscionable but legal and enforceable.

23   Memorandum & Order, No. C 04-2436 MHP, slip. op. at 8–9 (Nov. 9 2004).  The arbitrator has also

24   held that the SPA (under plaintiff's theory an example of a "non-proportional agreement") did not

25   violate any fiduciary duties owed to the minority shareholders and was enforceable as a means to

26   govern the process of stock valuation in a repurchase.  The issues have already been decided by this

27   court's order and by the final arbitration award.  Plaintiff's attempt to re-cast his failed claims with

28

14

respect to the enforceability and the non-proportionality of the SPA as a request for declaratory relief is barred by issue preclusion.

Additionally, the request for attorneys' fees included in plaintiff's sixth cause of action is barred by res judicata. Plaintiff requests that this court award him "reasonable legal fees" because but for the violations of fiduciary duties by the defendants, plaintiff "would not have been obliged to seek and retain services of an attorney to defend his interests." Faust Dec. Exh. 1¶116. However, plaintiff, in its brief to the arbitrator, submitted a detailed request for attorneys' fees pursuant to section 7.1 of the SPA for arbitrations costs as well as the time spent litigating before this court. Rice Dec. Exh 9 at 3–17. Although the arbitrator did order Mazzetti to pay $12,900 of the $19,500.00 in arbitration costs, the request for attorneys' fees was considered and denied as there was no explicit grant made in the final arbitration order. Rice Dec., Exh. 2, at 2–3. Plaintiff's claim for an award of reasonable legal fees relating to the litigation of the stock valuation issue was decided by an earlier judgment, it involved the same parties and it arose out of the same transaction. Thus, a re-litigation of this issue would not only impair the valid award rendered by the arbitration judge but it would be a waste of judicial resources.

II.    Leave to File Amended Complaint

All plaintiff's proposed amendments to the complaint are barred under either the doctrine of res judicata or collateral estoppel and thus it would be futile to grant leave to amend the complaint. Although leave to amend is granted with "extraordinary liberality," Morongo, 893 F.2d at 1079, a district court may validly decline to grant leave when to allow for such amendment would be an exercise in futility. Bonin, 59 F.3d at 845. As discussed above, all of plaintiff's new proposed causes of action are precluded because they involve claims and issues that have already been decided during the arbitration hearing or in the earlier phase of this action. Amending the complaint to include these claims would be futile. Consequently, plaintiff's motion for leave to amend his complaint to add the fourth, fifth and sixth causes of action is denied.[7]

15

1

2

3    CONCLUSION

4         For the foregoing reasons, the court hereby GRANTS defendants' Motion to Confirm the

5    final arbitration award.  The court DENIES plaintiff leave to amend his complaint to add the fourth,

6    fifth and sixth causes of action.

7

8         IT IS SO ORDERED.

9

10

11   Dated: October 27, 2005

12                                                        _____
                                                          MARILYN HALL PATEL
13                                                        United States District Court Judge
                                                          Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

ENDNOTES

1.  Defendant relies heavily on California preclusion law, however, federal preclusion law applies when a federal court confirms an award issued pursuant to an arbitration.  Federal courts have developed federal common law rules to govern preclusion in cases where 28 U.S.C.A section 1738 is inapplicable.  These common law rules have "not been extended to arbitration hearings." McDonald v. City of West Branch, Mich., 466 U.S. 284, 287 (1984).  The Supreme Court in McDonald has held that arbitration is not a "judicial proceeding" and, therefore, the "full faith and credit" requirement of section 1738 does not apply to "unreviewed arbitration decision[s]" and thus they cannot be given preclusive effect.  Thus, by implication, the fact that the arbitration was held in California does not in and of itself mandate the use of California preclusion law.

In Priest v. Am. Smelting & Red. Co., 409 F.2d 1229, 1231 (9th Cir. 1969), the Ninth Circuit held that California preclusion law applies in diversity actions.  In affirming the Priest holding, the Jacobs, court did not reach the issue of whether the entry of a federal judgment on an arbitration would implicate federal preclusion law.  See Jacobs, 291 F.3d at 1177 (quoting Priest, 409 F.2d at 1231).  However, the Ninth Circuit has held that a "state court's *confirmation* of the arbitration award constitutes a judicial proceeding for purposes of section 1738." Caldeira v. County of Kauai, et al., 866 F.2d 1175 (9th Cir. 1989) (emphasis added).  In such a case, state preclusion law would be appropriate.  Thus, necessarily, the confirmation of an award by a federal court renders an arbitration hearing a "judicial proceeding" under section 1738, thereby implicating federal preclusion law.  Since this court has jurisdiction over the current matter because of the presence of a federal question and not diversity, federal preclusion law applies.   Notwithstanding the above, the plaintiff's claims are barred under either federal or California preclusion law.

2.  Paragraph 19.1 of the SPA allows the decision of an AAA-appointed arbitrator to be enforced by any court of competent jurisdiction.

3.  At the October 17, 2005 hearing, plaintiff Roderick claimed that the breach of fiduciary duties issue was not precluded because the arbitrator did not specifically address the currently asserted claims but limited his review to the four-corners of Roderick's contract with Mazzetti.  Thus, plaintiff asserted tort and fraud claims, as well as claims brought under section 400 dealing with the right of individual shareholders to equal treatment (discussed *infra*), were not addressed.  This claim cannot be reconciled with the record as the arbitrator limited himself only to the "terms of the [Court's November 9, 2004] Order" and the scope of that order was "the stock valuation dispute between the parties."  Rice Dec., Exh 1 at 1.  This stock valuation dispute encompassed contract, tort and fraud claims.  Not only did the arbitrator consider plaintiff's tort and fraud allegations, he specifically discussed each of the stock purchase agreements (separate from the SPA) against which plaintiff has asserted claims.  See Rice Dec., Exh 1 at 6, 9 (considering plaintiff's claims that the June 23, 2004 Mazzetti stock purchase agreement and the May 16, 2001 stock purchase agreement with principal Mazzetti shareholders operated to impair the valuation of his stock).  None of these other stock purchase agreements were within the four-corners of plaintiff's agreement with Mazzetti in the SPA, but involved allegations that defendants had tortiously and fraudulently valued plaintiff's stock below that of preferred shareholders.  As the arbitrator has clearly stated: "Roderick argues

17

there were a series of events planned and calculated by Mazzetti management to deprive minority shareholders of their rights.  The burden of proof was not established by the evidence.  The evidence established no breaches of fiduciary obligation or independent management regarding the valuation of the purchase price for Roderick's shares.  The challenged activities in question, relative to the purchase price, were conducted to ensure the survival of Mazzetti and the smooth transition of management." Rice Dec., Exh 1 at 10–11.

4.  The court need not reach defendant's arguments with respect to the requirements of California Corporations Code section 800 or the business judgment rule as plaintiff's claim is barred not only by issue preclusion but also by lack of standing.

5.  Section 400 states in relevant part that: "all shares of any one class shall have the same voting, conversion and redemption rights and other rights, preferences, privileges and restrictions, unless the class is divided into series. If the class is divided into series, all the shares of any one series shall have the same voting, conversion and redemption rights and other rights, preferences, privileges and restrictions.  Cal. Corp. Code § 400(b).

6.  At the October 17, 2005 hearing, defendant noted (and plaintiff did not dispute) that the underlying stock agreements that are the subject of plaintiff's claims are: (1) the 1994 SPA to which plaintiff submitted to in 1998, (2) the May 16, 2001 stock purchase agreement with four principal Mazzetti shareholders and (3) the June 23, 2004 William Mazzetti severance agreement.  All of these agreements were considered by the arbitrator in his determination that no fiduciary duties had been violated and that the stock purchase price for plaintiff's shares was $987.75.  See Rice Dec., Exh 1 at 6, 9.

7.  Given the court's denial of the motion for leave to amend the complaint, the court need not reach defendant's objections to aspects of plaintiff's complaint that claim that the SPA is an ERISA-governed agreement as these claims are not new additions to the complaint.  However, it is true that this court has already ruled on the issue, finding that the SPA is not an agreement subject to the protections of ERISA and thus any attempts to re-litigate this matter are precluded.  Memorandum & Order No. C 04-2436 MHP, slip. op. at 14 (Nov. 9, 2004).

18