UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBIN RODERICK,

    Plaintiff,

    v.

MAZZETTI & ASSOCIATES, INC., WALTER VERNON, ALBERT OSTROY, and ANGELICA GRAHAM,

    Defendants.

No. C 04-2436 MHP

**MEMORANDUM & ORDER**
**Re: Plaintiff's Motion for Leave to File Second Amended Complaint**

On June 21, 2004, plaintiff filed this action against defendants alleging wrongful termination, age discrimination, and breach of fiduciary duty in violation of the Employment Retirement Income Security Act, 29 U.S.C. section 1001 et seq. ("ERISA") and the California Fair Employment and Housing Act ("FEHA").  The plaintiff seeks economic damages, injunctive relief to cease a pending arbitration, and declaratory relief to define applicable ERISA protections in his case.  Now before the court is plaintiff's motion for leave to file his second amended complaint.  In this new complaint, plaintiff seeks to add allegations that defendants, Mazzetti & Associates, Inc. ("Mazzetti"), Walter Vernon, Albert Ostroy, Angelica Graham, Ron Wilson, and John Pappas breached their fiduciary duties to Mazzetti's 2002 Employee Stock Ownership Plan ("ESOP" or the "Plan"), causing harm to the plan and its beneficiaries in violation of ERISA.  Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.      Plaintiff's Previous Claims

The background of this case has been set forth in exhaustive detail in this court's prior order. For purposes of this current motion, however, the necessary facts are outlined below.

Robin Roderick was an employee of the consulting and engineering firm Mazzetti from 1997 until 2003, when he alleges that he was terminated in 2003 due to his age. At the time of his termination, plaintiff was sixty-three (63) years old and owned twenty (20) shares of Mazzetti common stock. The stock was subject to the company's 1994 Stock Purchase Agreement ("SPA"), which plaintiff signed on August 4, 1998. A dispute arose over the value of plaintiff's 20 shares under the agreement, as well as the legality of the SPA in general. Specifically, plaintiff alleged that his and other minority shareholder stock had been improperly valued in relation to that of defendants in their renegotiated severance agreements ("renegotiated SPAs"). Plaintiff submitted the parties' dispute to arbitration, in accordance with the provisions of the SPA, on February 24, 2004.

On July 21, 2004, plaintiff filed the present action alleging wrongful termination, age discrimination, and breach of fiduciary duty in violation of ERISA and FEHA. This court held that the SPA was legally enforceable, although it did not qualify as a de facto employee benefit plan governed by ERISA, and ordered the parties to return to arbitration on the issue of the value of plaintiff's twenty shares of Mazzetti common stock as well as the related issues of fiduciary breach and independent management arising from corporate decisions affecting stock value. The court stayed, pending arbitration, plaintiff's age discrimination claims, FEHA claims and ERISA claims, as they related to the ESOP. Memorandum & Order, No. CV 04-2436 MHP, slip. op. at 6–18 (N.D. Cal. Oct. 27. 2005) (Patel, J).

The parties returned to arbitration and on June 3, 2005, the arbitrator issued a tentative award or statement of decision establishing that the purchase price to be paid by Mazzetti to Roderick was $987.75 per share for a total of $19,755.00. The arbitrator also found that there had been no breach of Mazzetti's fiduciary obligations with respect to the valuation of the purchase price of the plaintiff's shares under the SPA in contrast to that of the renegotiated SPAs—particularly that of Bill

2

Mazzetti's. Mark J. Rice Declaration in Support of Def.'s Petition to Confirm Arbitration Award (hereinafter "Rice Dec."), Exh. 1 at 11.

Subsequently, defendants filed an unopposed motion to confirm the arbitration award in federal court, while plaintiff simultaneously filed a motion for leave to file an amended complaint. Plaintiff's proposed first amended complaint added three new causes of action, reasserting his breach of fiduciary duty claim with respect to the stock valuation under the auspices of a shareholder derivative action, and a breach of California Corporations Code section 400, requesting declaratory relief with respect to all "non-proportionate" stock purchase agreements, and a request for attorneys' fees.

The court granted defendants' motion to confirm the arbitration award and denied plaintiff's motion for leave to file an amended complaint. The court found that the arbitrator's final award operated as a final judgment on the claims and issues presented therein for purposes of res judicata and precluded re-litigation of issues falling within the scope of that adjudication—specifically, plaintiff's breach of fiduciary duty claim with respect to the valuation of his stock. Memorandum & Order, No. CV 04-2436 MHP, slip. op. at 8–15 (N.D. Cal. Oct. 27. 2005) (Patel, J)

II.     Plaintiff's Present Claims

Following this court's denial of plaintiff's motion for leave to file his first amended complaint, plaintiff made a written demand to the fiduciaries and management of the ESOP to invalidate the renegotiated SPAs for Bill Mazzetti, Walter Vernon, John Pappas and Albert Ostroy. See Faust Dec., Exhs. 2, 3. In his demand, plaintiff asserted that the renegotiated SPAs discriminated against the plan with respect to the valuation of company stock, and that the agreements involved the Plan as an "essential element of a financing scheme that is not for the exclusive benefit of the Plan or its beneficiaries and participants" and thus violated defendants' fiduciary duties. Id. Mazzetti rejected this demand.

Subsequently, plaintiff filed the current motion seeking leave to file his second amended complaint, and basing his new allegations upon his alleged beneficiary-status under the Mazzetti

3

ESOP. The Plan terms direct how the ESOP assets—comprising Mazzetti stock (or "Company Stock Accounts") and company and employer contributions ("Other Investment Accounts")—are to be allocated to the accounts of participants, and also how a participant's plan benefit will be distributed upon termination from service. Id. Roderick Dec., Exh. 16 §§ 6, 11.

In his proposed second amended complaint, plaintiff seeks to add allegations that defendants breached their duties under ERISA as fiduciaries of the ESOP, resulting in injury to the ESOP by "obligating the corporation to pay greater than fair market ESOP value" for their own stock under the renegotiated SPAs. Plaintiff's Proposed Second Amended Complaint for Violation of ERISA and Age Discrimination ("Proposed Complaint") at ¶ 18. Plaintiff seeks injunctive relief from this court against the "performance of any such discriminatory agreements in breach of ERISA's fiduciary duties." Id. at ¶ 23.

LEGAL STANDARD

I.  Leave to Amend

The Federal Rules of Civil Procedure provide that leave to amend be "freely given when justice so requires." Fed. R. Civ. Pro. 15(a). The Ninth Circuit has construed this broadly, requiring that leave to amend be granted with "extraordinary liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality"); Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F. Supp. 1237, 1241 (N.D. Cal. 1997) (Jensen, J.) ("[T]he court must be very liberal in granting leave to amend"); Poling v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987) (describing a "strong policy permitting amendment").

Despite this liberal policy of amendment, leave will not be given where the district court has "a substantial reason to deny" the motion. J.W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 15.14[1] (3d ed. 1998) ("[D]istrict judge[s] should freely grant leave to amend when justice requires, absent a substantial reason to deny."). The court may decline to grant leave where there is

4

1  "any apparent or declared reason" for doing do. Foman v. Davis, 371 U.S. 178, 182 (1962); see also
2  Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991).
3         The Ninth Circuit has interpreted Foman as identifying "four factors relevant to whether a
4  motion for leave to amend pleadings should be denied: undue delay, bad faith or dilatory motive,
5  futility of amendment, and prejudice to the opposing party." United States v. Webb, 655 F.2d 977,
6  980 (9th Cir. 1981); see also Poling, 829 F.2d at 886. The enumerated factors are not of equal
7  weight and delay alone is insufficient to deny leave to amend. Id. (citing Howey v. United States,
8  481 F.2d 1187 (9th Cir. 1973)). By the same token, "[p]rejudice to the opposing party is the most
9  important factor." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990). However,
10 futility alone can justify the denial of a motion to amend. Bonin v. Calderon, 59 F. 3d 815 (9th Cir.
11 1995). The party opposing leave to amend bears the burden of showing prejudice. DCD Programs,
12 833 F.2d at 187. In such cases, justice does not require amendment, as leave to amend would further
13 an injustice upon the defendant.

15 II.    Res Judicata and Collateral Estoppel
16        The doctrine of res judicata, or claim preclusion, prohibits litigation in a subsequent action of
17 any claims that were raised or could have been raised in a prior action. Owens v. Kaiser Found.
18 Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (citations omitted). Under Ninth Circuit law, an
19 adjudication in a prior action serves as a bar to litigation of a claim if the prior adjudication (1)
20 involved the same claim as the later suit; (2) reached a final judgment on the merits and (3) involved
21 the same parties or their privies. Id.; see also Blonder-Tongue Labs. v. University of Ill. Found., 402
22 U.S. 313, 323-24 (1971).
23        In determining whether two claims are identical, the Ninth Circuit employs four criteria: (1)
24 whether the rights or interests established in the prior judgment would be destroyed or impaired by
25 prosecution of the second action; (2) whether substantially the same evidence is presented in the two
26 actions; (3) whether the two suits involve infringement of the same right and (4) whether the two
27 suits arise out of the same "transaction." Nordhorn v. Ladish Co., 9 F.3d 1402, 1405 (9th Cir.

5

1993); Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir.), cert. denied, 459 U.S. 1087 (1982) (quoting Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980)). The fourth criterion—whether the two suits arise out of the same transaction—is the most important. Id. at 1202. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought. C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987).

Issue preclusion, also called collateral estoppel, operates similarly but is of a narrower scope. "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir. 1992). Collateral estoppel may be used defensively against a plaintiff when the plaintiff had a "full and fair chance" to litigate the same issue against a different defendant. Blonder- Tongue Lab., Inc. v. Univ. Ill. Found., 402 U.S. 313, 333, 334-38 (1971); see also Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329-31 (1979) (comparing defensive and offensive collateral estoppel).

DISCUSSION

I.  ERISA Claims

Plaintiff asserts that the defendants, in adopting SPAs which provided a higher purchase price for their shares as opposed to those of ESOP participants breached their fiduciary duties under ERISA, specifically their duty to act solely in the interest of the plan participants and beneficiaries, their duty of impartiality, and their duty to provide complete and accurate material information since they did not disclose the renegotiated SPAs to the plan participants. Proposed Complaint at ¶¶ 18–23.

6

### A. Judicial Estoppel

As a preliminary matter, the court finds that plaintiff's current claims are barred under the doctrine of judicial estoppel. As the Ninth Circuit has frequently explained, "[j]udicial estoppel precludes a party from gaining an advantage by taking one position[] and then seeking a second advantage by taking an incompatible position." See Wagner v. Professional Eng'rs in Cal. Gov't, 354 F.3d 1036, 1044 (9th Cir. 2004) (quoting Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir. 1996)). Judicial estoppel is an equitable doctrine " intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." Wagner, 354 F.3d at 1044 (internal citations omitted). It applies to all "stated position[s]" of parties—whether "an expression of intention, a statement of fact, or a legal assertion"—and it may govern representations made in administrative proceedings. See Helfand v. Gerson, 105 F.3d 530, 535 (9th Cir. 1997); Rissetto, 94 F.3d at 604; see also Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782–83 (9th Cir. 2001) (explaining that the doctrine of judicial estoppel is informed by "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings").

During arbitration plaintiff sought to benefit from the very agreements which he now asserts are in violation of ERISA. In his brief submitted during arbitration, plaintiff argues that

> Roderick's remedy should be equal treatment with that accorded Bill Mazzetti's shares . . . Robin Roderick is entitled to equal treatment from the Corporation as was accorded Bill Mazzetti and the other dominant shareholders . . . . The terms of Bill Mazzetti's buyout should be applied pro rata to the sale of Mr. Roderick's stock . . . .

Mark J. Rice Declaration in Support of Def.'s Opp. To Pl.'s Mot. For Leave to File First Amended Complaint, Exh. 13 (Roderick's Arbitration Brief) at 24–25. Defendants are correct that plaintiff's prior positions are incompatible with his current claim. On the one hand, under the legal theory he advanced before the arbitrator, he, as well as Mazzetti and the other controlling shareholders, were entitled to a higher per share price than would be paid for the ESOP shares. On the other hand, plaintiff now argues that the fact that defendants were offered a premium over the ESOP share price,

7

a remedy which he himself pursued, is a violation of ERISA. Plaintiff's initial contention was that the valuation was improper because "he" was not awarded a higher purchase price.

Indeed, in his initial complaint, plaintiff argued that defendants had violated ERISA because of their "failure [as fiduciaries] to acquire Company stock" and that the damage to the ESOP was "the loss of equity due to the absence of Mazzetti & Associates, Inc. Stock in the Plan." Complaint ¶¶ 30, 33. Plaintiff cannot in one instance claim that the plan fiduciaries have violated ERISA through their failure to acquire Mazzetti stock, while in the other argue that any agreements for sale of this Mazzetti stock—stock he contends had not even been purchased—also violate ERISA. Plaintiff's shifting characterizations of his claims are not only unpersuasive but a clear example of a litigant who is attempting to play fast and loose with the judicial system.

Regardless of plaintiff's attempts to suggest otherwise, this is the same stock and the same claim of breach of fiduciary duty that has been the subject of plaintiff's original complaint, his first amended complaint, the arbitration proceeding, and the court's earlier order confirming the award and rejecting his first amended complaint. The allegations continue to be recharacterized or mischaracterized under different rhetoric. No matter how much plaintiff attempts to dress them up, confuse the issues and obfuscate with his evolving theories, the bottom line is these are the same claims that the arbitrator and the court have adjudicated. Estoppel is another word for enough.

B.     Res Judicata

Moreover, as in plaintiff's earlier motion for leave to file a first amended complaint, this current motion is merely another attempt by Roderick to raise claims that are barred by claim and issue preclusion. The crux of plaintiff's complaint concerns the alleged inequity between the higher per share price of defendant's stock—in particular that of Bill Mazzetti—and that of plan participants such as plaintiff. As noted above, plaintiff initially raised his claims that defendants breached their fiduciary duties during arbitration. The arbitrator found no breach of fiduciary duties, however, noting that Mazzetti was undergoing significant structural difficulties and that "[t]he evidence was clear that Mazetti took a number of significant steps to ensure its turnaround and

8

1   continued existence—[Mazzetti's] separation agreement was one such step." Rice Dec., Exh. 1 at

2   9–10.  In the words of the arbitrator "the challenged activities in question, relative to the purchase

3   price, were conducted to ensure the survival of Mazzetti and the smooth transition of management."

4   Id. at 11.  Further, in a detailed section entitled "The Purchase Price To Be Paid for Shares," the

5   arbitrator exhaustively discussed plaintiffs claims, finding that "[t]he Bill Mazzetti agreement

6   delineated separate items for remuneration . . . and that [t]here is no evidence that the price paid to

7   Bill Mazzetti was not a fair market value . . . ."  Id. at 10.

8       Notwithstanding, although this matter had been fully and fairly litigated, plaintiff raised the

9   same issue again in this court, alleging a general breach of fiduciary duty.  Specifically, plaintiff

10  alleged that defendants

11      caused the corporation to enter sweetheart deal contracts with themselves and two controlling
        shareholders to provide additional payment per share upon repurchase of the defendants'
12      stock, in excess of the repurchase price paid to the rest of the shareholders.

13  Proposed First Amended Complaint ¶ 99.  Plaintiff also attempted to make the same argument

14  through the vehicle of a shareholder derivative action and through allegations that defendant had

15  breached Corporations Code section 400.  This court found that all of these claims were barred by

16  res judicata and denied plaintiff's motion to amend his complaint, observing that "[t]he arbitrator has

17  already made an explicit finding over whether an alleged breach of fiduciary duties by defendants

18  impaired the value of plaintiff's shares . . . ."  See Memorandum & Order, No. CV 04-2436 MHP,

19  slip. op. at 12 (N.D. Cal. Oct. 27. 2005) (Patel, J).  Thus, not only was the issue of the pricing

20  differential between plaintiff's shares of company stock versus defendants' shares of company stock

21  under their SPAs addressed by the arbitrator and resolved in favor of defendants, this court has

22  already held that the issue is barred by collateral estoppel.  See Id.

23      The current formulation essentially restates plaintiff's claim that defendants violated a

24  fiduciary duty by consummating the renegotiated SPAs.  Although plaintiff contends that this matter

25  involves fiduciary duties under ERISA as opposed to fiduciary duties owed by majority or

26  controlling shareholders, it is clear that the issue of whether the stock valuation by the management

27  of Mazzetti breached any fiduciary duties has been previously considered and found to have been y

28

9

1 fair. Whether through general allegations of a breach of fiduciary duties, through a shareholder
2 derivative action, through allegations of violations of California Corporations code 400 or through
3 the vehicle of ERISA, it is evident that plaintiff's claim has already been fully and fairly litigated.
4 This new ERISA claim is unavailing as the doctrine of res judicata bars not only re-litigation of
5 claims that were actually pursued, but also claims that could have been brought. See C.D.
6 Anderson, 832 F.2d at 1100. Plaintiff, by reconstituting his contention as one falling under the
7 auspices of ERISA, is still barred from re-litigating an identical claim that was properly decided in
8 arbitration. The arbitrator has determined that there was no breach of fiduciary duty by the
9 corporation or its majority shareholders and the re-casting of the failed claim as an "ERISA claim"
10 does not save the issue from preclusion.

11 In any event, as this court has already held, the SPAs are not governed by ERISA and thus
12 defendants were not under any obligation to pay a price *higher* than the fair market value for the
13 ESOP shares. This court will not waste further judicial resources entertaining any further re-
14 characterizations of plaintiff's that the management of Mazzetti breached their fiduciary obligations
15 in the valuation of stock.

17 II.     Leave to Amend
18 Plaintiff attempt to raise claims otherwise barred by res judicata under the aegis of an ESOP
19 violation is wholly transparent. As aforementioned, his proposed second amended complaint is
20 nothing more than an attempt re-litigate the stock valuation dispute. While leave to amend is
21 granted with "extraordinary liberality," Morongo, 893, F.2d at 1079, a district court may decline to
22 grant leave when allowing for such an amendment would be an exercise in futility. Bonin, 59 F.3d
23 at 845. Plaintiffs claims are barred under res judicata and additionally he is estopped from aserting
24 his current cause of action under ERISA. Amending the complaint to include these claims would be
25 futile.

10

CONCLUSION

For the reasons stated above, the court DENIES plaintiff's motion for leave to file a second amended complaint. No further amendments to plaintiff's complaint are permitted—particularly as they relate to the difference in valuation between plaintiff's and defendants' shares. Plaintiff may proceed with his age discrimination and FEHA claims.

IT IS SO ORDERED.

Dated: July 6, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

**ENDNOTES**

12